Reserve, etc., Ins. Co. *v.* Dulin, Receiver—82 Ind. App. 630.

RESERVE LOAN LIFE INSURANCE COMPANY *v.* DULIN, RECEIVER.

[No. 11,295.    Filed June 8, 1922.    Rehearing denied November 23, 1922.]

1. TRUSTS.—*A finding that money was received by a trust company for remission to a mortgagor is a finding that such funds are trust funds.*—A finding of facts by the court in an action by a creditor customer against the receiver of an insolvent trust company, that the company frequently loaned money on mortgages some of which had been assigned to the customer; that money received from such mortgagors in payment of interest and principal was customarily remitted to the customer; that the company carried a general banking account with a bank and deposited therein daily checks and drafts received in its business; and that payment of the principal of certain mortgages had been made by check and so deposited, is equivalent to a finding that such funds were trust funds in the hands of the trust company, which is supported by evidence that the trust company had been prohibited from making any more collections and did so notwithstanding this prohibition. p. 635.

2. TRUSTS.—*Trust funds commingled with assets of insolvent trust company constitute preferred claim against the receiver.*—Trust funds received by a trust company when insolvent and after being prohibited from collecting such funds, which are commingled with its general assets in the hands of the receiver, must be regarded as a preferred claim against the receiver (*State, ex rel., v. Farmers, etc., Bank,* 71 Ind. App. 216, distinguished). p. 640.

From Hamilton Circuit Court; *E. E. Cloe,* Judge.

Action by the Reserve Loan Life Insurance Company against John L. Dulin, receiver for the Hamilton Trust Company for the recovery of claims as preferred claims. From judgment for the plaintiff allowing its claim, but without preference, plaintiff appeals. *Reversed, with instructions.*

*Guilford A. Deitch* and *Frank G. West,* for appellant.
*Shirts & Fertig,* for appellee.

NICHOLS, P. J.—Appellant filed two separate claims with appellee as receiver of the Hamilton Trust Com-

NOVEMBER TERM, 1924.      631

Reserve, etc., Ins. Co. v. Dulin, Receiver—82 Ind. App. 630.

pany, an insolvent corporation in which it demanded preference over the general creditors of such corporation. One of the claims was for $448.33, alleged to have been deposited with the trust company by Horace G. Brown and others for transmission to appellant in the payment of certain coupon interest notes held by appellant against the several persons making the deposits. Thereafter there was a release of $19.83 of the claim because of subsequent payment. This claim involves a part of a certificate of deposit which was involved in the case of Reserve, etc., Ins. Co. v. Dulin, Rec. (1919), 69 Ind. App. 363, 122 N. E. 3. The other claim was for $1,845, alleged to have been paid to the Hamilton Trust Company by one Miller in satisfaction of a mortgage note owned by appellant, which amount the trust company appropriated to its own use.

The respective claims were allowed without preference. Thereupon appellant filed objections and exceptions to the report of such allowance by the receiver, and, after trial, the court stated special findings of fact and conclusions of law upon which judgment was rendered allowing such claims without preference over the general creditors. After appellant's motion for a new trial was overruled, this appeal.

The errors assigned are the court's conclusions of law, and its action in overruling the motion for a new trial.

It is averred in the first claim that appellant refused to accept the certificate of deposit as payment, and placed it in bank for collection; that it was presented to the trust company, but at the time of presentation it had been closed by the auditor of state. It is averred in the second claim that Miller paid $1,845 to the trust company for the use and benefit of appellant as its agent, and ordered and directed the trust company to transmit the same to appellant, but instead of so

doing the trust company appropriated said sum to its own use, commingled the funds with its own funds, entered the same on its general ledger of December 30, 1914, as a part of its general assets, and that it was included in the general assets at the time of the appointment of the receiver.

In the exception to the report appellant says that the report is contrary to law and rules of equity, for the reason that the $448.33 was received by the trust company as a trust fund for the use and benefit of appellant, and that without-right and in violation of its said trust, and without the knowledge of appellant, the trust company appropriated the said sum to its own use, and commingled the same with its funds, and used said funds in the payment of its debts and obligations which were proper charges against its general assets, thereby reducing its outstanding liabilities, and that the same thereby enured to the benefit of the general creditors and increased the assets in the hands of the receiver, all without the knowledge of appellant and in violation of said trust.

In its exception to the report of the receiver, as to the second claim, appellant says that the report is contrary to law and rules of equity for the reason that the trust company received the funds as the agent of appellant, and as a trust fund for appellant's use and benefit, and without right and in violation of its trust and without the knowledge or consent of appellant had appropriated said sum to its own use and commingled said sum with its own funds, and deposited the same to its credit in the National City Bank in Indianapolis with other funds it then had in said bank. That thereafter said trust company drew drafts against said sums and said other deposits, and used said sums in the payment of its debts and obligations which were proper charges against the general assets and which reduced

its then outstanding liabilities. That thereby such wrongful appropriation enured directly to the benefit of the creditors of the trust company and thus increased the assets coming into the hands of the receiver. The claims were consolidated for trial.

It appears by the special finding of facts that the Hamilton Trust Company was a loan, trust and savings deposit company organized under the laws of the State, and that it was taken in charge by the auditor of state as an insolvent corporation on January 2, 1915, and appellee appointed as receiver. It had theretofore for a long time been engaged in loaning money on real estate mortgages which were from time to time assigned to appellant; that it had received the money from mortgagors in payment of interest and principal and remitted the same to appellant, except the amounts here involved, and that appellant had received and accepted the same. The trust company carried a general banking account with the National City Bank of Indianapolis as its correspondent, and from day to day remitted to said bank to deposit therein checks and drafts received in the course of its business, and drew drafts and checks thereon until the time it was closed when the funds in said account were exhausted. Prior to December 30, 1914, one Fred B. Miller had executed to the trust company a note and mortgage on real estate, which had been assigned to appellant, and on said date one Miriam Miller who had assumed and agreed to pay the mortgage, paid the amount thereof with interest in the total sum of $1,845 to the trust company in payment of the mortgage, the same being paid by a cashiers' check drawn on the First National Bank of Sheridan, which check, together with other checks, was on the same day sent to the National City Bank and deposited to the trust company's general account in the regular course of business. At said time and theretofore the trust

company was insolvent. Said $1,845 was never remitted to appellant but was commingled with the trust company's own funds and cannot be traced into any particular fund or property. On January 2, 1915, the trust company loaned the Ousler Auto Company $1,717 and took a note of said auto company therefor. Said auto company deposited with the trust company, as a commercial deposit at said time and as a part of the same transaction, $1,392.23 of the money so loaned it. On January 4, 1915, said auto company drew a check for said $1,392.23, which was paid by the trust company drawing a draft on the National City Bank. Two drafts were drawn on that day, one or the other of which included the said $1,392.23. The auto company was the sales agent in the city of Noblesville for the Studebaker Corporation, and as such desired a loan from said corporation, and on December 31, 1914, the corporation deposited with the trust company $2,000 and took at the time a certificate of deposit therefor, with the agreement that the trust company would make a loan of said amount, or so much thereof as might be desired, to the auto company which loan was thereafter negotiated. The deposit of the corporation was made by check on a New York bank which was remitted on said day to the National City Bank and deposited in the general account. The auto company's note came into the hands of the receiver as a part of the general assets and was collected by him.

The trust company also when it was insolvent collected certain coupon interest notes owned by appellant which were for interest on mortgages which had been assigned to appellant by the trust company in the total sum of $215.51. The trust company on January 22, 1915, sent to appellant a certificate of deposit covering the said amount. This certificate of deposit is the one mentioned in *Reserve, etc., Ins. Co.* v. *Dulin, Rec., supra.*

NOVEMBER TERM, 1924.    635

Reserve, etc., Ins. Co. *v.* Dulin, Receiver—82 Ind. App. 630.

The aforesaid certificate of deposit was placed in bank for collection and when presented the trust company was closed.   The $215.51 had been commingled with the trust company's funds and cannot be traced into any particular fund or property.

On these findings the court stated its conclusions of law that appellee was entitled to judgment for costs, and that appellant was entitled to recover of appellee $2,060 as an unpreferred claim.

Our interpretation of these findings is that the $1,845 collected by the trust company upon a mortgage which it had already assigned to appellant and the

1.  $215.51 collected for interest on mortgages which had been assigned to appellant by the trust company were each trust funds in the hands of the trust company at the time of the appointment of the receiver. As confirmatory of this interpretation of the findings it appears by the undisputed evidence that before the collection of the said $1,845, and of the items composing the $215.51, the trust company had been expressly prohibited from making any further collections for appellant, and this because of some information which appellant had of the failing condition of the trust company.   At the time of the collection of the $1,845 the trust company, instead of remitting such sum to appellant, commingled the same with its own funds and falsely informed appellant that the same would not be paid but that arrangements were being made to renew the loan.

We shall therefore in the further consideration of this case treat each of the sums aforesaid as trust funds in the hands of the Hamilton Trust Company at the time of the appointment of the receiver.

Appellant says that it has been able to trace the fund represented by the $1,845 claim into a loan which had been collected by the receiver, and that having so traced

636    APPELLATE COURT OF INDIANA,

Reserve, etc., Ins. Co. *v.* Dulin, Receiver—82 Ind. App. 630.

the same, it is entitled to the proceeds of such loan which had been collected by the receiver, but appellee earnestly contends that this is not the theory of appellant's claim. It being charged in such claim that the fund was appropriated to the trust company's own use and commingled with its own funds, and that it was entered on its general ledger as a part of the gross assets, and that it was included in the gross assets at the time of the appointment of the receiver, we regard this as a sufficient averment to justify appellant in tracing the funds into the hands of the receiver as the proceeds of the loan in which it had been invested, or in any form in which it could be identified. But, while the evidence would seem to justify a finding tracing a substantial portion of the funds misappropriated into the auto company loan, the court made no special finding of this fact.

Confining ourselves, in the determination of this case, to the special findings of fact and conclusions of law, we are confronted with the question as to whether when appellant has traced the misappropriated funds into the general assets in the hands of the receiver, he is entitled to have his claim therefor allowed and paid as a preferred claim out of such general assets. It is appellant's contention that the trust company having received appellant's moneys wrongfully at a time when the trust company was insolvent and commingling the same with its funds, appellant is entitled to an allowance for such amount so misappropriated and commingled, as a preferred claim, citing as authority *State, ex rel.,* v. *Farmers, etc., Bank* (1919), 71 Ind. App. 216, 124 N. E. 501.

Appellee forcefully contends, however, that there can be no equitable preference out of the general assets of an insolvent debtor for the recovery of trust funds which have been so commingled with its own funds or

property as not to be traceable into any specific property or fund, contending that the rationale of equitable preference is recovery in specie, i. e. of the very thing. Appellee earnestly contends that the case of *State, ex rel.*, v. *Farmers, etc., Bank, supra,* is not of controlling force in this case for the reason that it was there found that "the money so paid by Applegate was by the bank wrongfully commingled with its own funds and remained therein," and that "there was on hand continuously from January 15, 1915, more than the principal and interest of said note." We do not understand, however, that a finding that money was wrongfully commingled with the bank's funds and remained therein necessarily means that the specific money paid in remained in the vaults of the bank, but rather that it was commingled with and became a part of the general assets of the bank. The expression in such opinion that the money was used either to pay debts of the delinquent bank or to augment its assets is, as to the first part thereof inaccurate and inapt, for as appellee points out, the finding was that it remained in the bank. As evidence that the case was passed without careful scrutiny, appellee calls attention to the fact that *McLeod* v. *Evans* (1886), 66 Wis. 401, 28 N. W. 173, 214, 57 Am. Rep. 287, therein cited with approval had been overruled by the Supreme Court of Wisconsin, in the case of *Nonotuck Silk Co.* v. *Flanders* (1894), 87 Wis. 237, 58 N. W. 383. It is true that said case had been overruled, there being a dissenting opinion from the majority of the court, and it is a fact that it has been followed and that it has been criticised in other states.

There has been much fluctuation and want of harmony in cases involving the principle here discussed. Many of them are annotated in L. R. A. 1916C p. 53, *et seq.*, from which it appears that the weight of authority in other states is against the rule announced in

*State, ex rel.,* v. *Farmers, etc., Bank, supra.* But that case is in harmony with the rule which has been followed in this State.

In *Indiana Trust Co.* v. *International, etc., Assn.* (1905), 165 Ind. 597, the court speaking with reference to the result of commingling trust funds with one's own money says on page 607: "If he thereafter mixed or confused his own money with this trust fund, and was unable to distinguish or to furnish the means for separating his money from the trust fund, he must bear the consequences which may result from the confusion of funds." It will be observed that by this holding the burden was placed upon the trustee to separate the two funds and that if he failed so to separate them he must bear the consequence of such failure. This is in harmony with the principle announced in *City of Lincoln* v. *Morrison* (1902), 64 Nebr. 822, 90 N. W. 905, 55 L. R. A. 885, where it was held that in tracing into the general assets of a bank after its failure and appointment of a receiver, trust money deposited and mixed with common funds, the burden will rest upon the receiver, if, on the face of things, the trust fund or its proceeds apparently reach him, of showing that neither came into his possession. This is a salutary rule, for the trustee or the receiver is better situated to disclose the facts in this regard than the *cestui que trust.*

In *Porter* v. *Roseman* (1905), 165 Ind. 255, 74 N. E. 1105, 112 Am. St. 222, 6 Ann. Cas. 718, it was held that it was not essential that the identical money of the trust funds should be traced but that it was sufficient to show that it went into the bank account of the trustee.

In *Miller* v. *Stephenson* (1901), 27 Ind. App. 271, on page 285, the court quotes with approval from *Windstanley* v. *Second Nat. Bank, etc.* (1895), 13 Ind. App. 544, as follows: "The true owner of property has the right

to have his property restored to him, not as a debt due and owing, but because it is his property wrongfully withheld. As between the *cestui que trust* and the trustee and all persons claiming under the trustee, except purchasers for value and without notice, all the property belonging to the trust, however much it may have been changed in its form or its nature or character, and all the fruits of such property, whether in its original or altered state, continue to be subject to and affected by the trust. * * * It was formerly held that these rules came to an end the moment the means of ascertaining the identity of the trust property failed. * * * In case of trust moneys commingled by the trustee with his own moneys, it was held that money has no ear-marks, and when so commingled the whole became an indistinguishable mass and the means of ascertainment fails. But equity, adapting itself to the exigencies of such conditions, finally determined that the whole mass of money with which the trust funds were commingled should be treated as a trust."

In *Shopert* v. *Indiana Nat. Bank* (1908), 41 Ind. App. 474, on 481, the court speaking of a trust fund says: "This being true, and the uncontradicted evidence showing that said deposit went into the general funds of the bank without the knowledge or consent of appellant, such general funds became impressed with the trust; and there being more than the amount of said deposit in the general funds at the time the receiver took charge, it came into the hands of such receiver subject to the trust, and a sufficient amount of said funds should be applied to the payment of such trust to satisfy the same before the distribution to the general creditors. It never having been the property of the bank, no portion of it should be applied to the payment of its debts."

Following the foregoing authorities we hold that the trial court having found that the moneys represented

by the respective claims had been commingled

2. with the general funds of the bank, and there being no finding that the same were not a part of the funds in the hands of the receiver, appellant was entitled to an allowance of its claims as preferred claims.

The judgment is reversed, with instructions to the trial court to restate its conclusions of law in harmony with this opinion.