STULTS, RECEIVER, ETC., *v.* GORDON, ADMINISTRATOR.

[No. 13,340.   Filed August 28, 1929.]

612

Fred A. Wiecking, Abram Simmons, Charles G. Dailey and *Virgil M. Simmons*, for appellant.

*W. H. Eichhorn, Frank W. Gordon* and *John H. Edris*, for appellee.

McMAHAN, C. J.—The salient and undisputed facts in this case are as follows: In 1921, "The Studabaker Bank" of Bluffton received from John Gordon, theretofore a patron and customer of said bank, certain Liberty Bonds, of the par value of $8,700, and gave him a written receipt therefor, and agreeing therein that, on the surrender of such receipt, after sixty days written notice by either party, it would deliver bonds of the same issue and amount and would pay interest semi-annually on the par value of such bonds at the rate of three-quarters of one per cent per annum, in addition to the rate of interest payable on the bonds. Said bank also received from other patrons like bonds in the sum of $14,200, for which it issued like receipts. "The Studabaker Bank" was later reorganized as the "Studabaker Bank," the latter bank receiving all the assets of, and assuming all obligations of, the former bank; the "Studabaker Bank" suspended business in 1927, and Morris E. Stults was thereafter appointed receiver thereof, and took possession of all its assets. When the bank suspended business, it neither owned nor had in its possession any bonds of the issues received from Gordon, and no such bonds have since come into its possession or the possession of the receiver. The next day after receiving said bonds, the bank sold them for $7,748.88. The proceeds from the bonds were used to augment assets of the bank. The banks paid the interest to Gordon as agreed, but no bonds of any kind have ever been returned to him, and he has never been paid anything therefor. He filed his complaint herein asking that the said bonds or other

bonds of the same issue be returned to him, or, in case that was not possible, that he recover the value of such bonds and that his claim be decreed to be a preferred claim and be paid before the payment of general claims. The claim was allowed in the sum of $9,137.85 which appellant, as receiver, was ordered to pay before paying the general creditors of the bank.

From this decree, the receiver appeals and contends that the transaction between Gordon and the bank was a sale of the bonds to the bank, and that the court erred in ordering the amount paid as a preferred claim.

Appellee has moved to dismiss this appeal, and, in support of such motion, insists that the receiver has no right of appeal. The record discloses that when appellant's motion for a new trial was overruled, he prayed an appeal to this court, that the court granted such appeal, and ordered appellant as receiver to give bond in the sum of $500 with a named surety which was approved by the court, and that the receiver was given sixty days for bill of exception. The appeal was thereafter perfected as a term-time appeal. It thus appears, and we hold, that appellant is prosecuting this appeal by leave of court. Indeed it might be said he is appealing under the direction of the court. Motion to dismiss overruled.

The bonds were left with the bank pursuant to an agreement to return bonds of the same issue and amount after sixty days' notice. They were not left with the bank as a deposit to be drawn by Gordon at his will. Like bonds were to be returned to him upon the surrender of the receipt after sixty days' notice. All obligations of the bank to Gordon would have been fully satisfied if the same bonds or bonds of the same issue had been returned to him. This constituted the bonds a special deposit. The relation of debtor and creditor did not exist. The true relation between the

parties was that of bailor and bailee. *Tyler County State Bank* v. *Shivers* (1926), 281 S. W. (Texas) 264.

When the bank sold the bonds, the proceeds arising from such sale became a trust fund, and Gordon was entitled to recover the amount thereof as a preferred ■■ claim, if, and to the extent that, he sustained the burden of proof of tracing this money, either in its original shape or in a substituted form, into the money which came into the hands of the receiver as a part of the assets of the bank. "And proof that the tort-feasor has mingled the trust funds with his own and made payments thereafter out of the common fund, is, nothing else appearing, a sufficient identification of the remainder of that fund coming into the hands of the receiver, not exceeding the smallest amount the fund contained subsequent to the commingling, as trust property, under the legal presumption that he regarded the law and neither paid out the trust fund nor invested it in other property, but kept it sacred." *Brennan* v. *Tillinghast* (1913), 201 Fed. 609, 613. To the same effect, see *Leach* v. *Sanborn State Bank* (1927), 203 Iowa 401, 212 N. W. 694, 51 A. L. R. 900; *Andrew* v. *Citizens State Bank* (1927), 203 Iowa 345, 212 N. E. 745, 51 A. L. R. 906; *In re Farmers & Merchants' Savings Bank* v. *Leach* (1926), 202 Iowa 859, 211 N. W. 532, 51 A. L. R. 910, and note p. 914.

"If a trust fund is established, a presumption arises that it was retained in the possession of the trustee and came into the hands of the receiver, and the ■■ burden is upon the receiver to overcome this presumption." *City of New Hampton* v. *Leach* (1926), 201 Iowa 316, 207 N. W. 348. See, also, *City of Lincoln* v. *Morrison* (1902), 64 Nebr. 822, 90 N. W. 905, 57 L. R. A. 885; *Sherwood* v. *Savings Bank* (1894), 103 Mich. 109, 61 N. W. 352; *Importers', etc., Nat. Bank* v. *Peters* (1890), 123 N. Y. 272, 25 N. E. 319; *Southern*

*Cotton Oil Co.* v. *Elliotte* (1914), 218 Fed. 567. "If the proceeds of the bonds went into the assets of the bank, so as to increase its assets and increase the assets going into the hands of the receiver, the claimants should have a preference." *Leach* v. *Sanborn State Bank, supra.*

The total amount of bonds which the bank had received from patrons including Gordon and to which it issued receipts identical with the receipt issued to appellee was $22,900, and there was no time after the receipt and sale of such bonds, including the Gordon bonds, that the said bank and the receiver since his appointment have had less than $25,000 in its possession. The proceeds derived from the sale of the bonds were not dissipated.

We cannot agree with appellant in his contention that the provision in the contract that the bank "will deliver bonds of the same issue and amount" renders the transaction a sale and not a bailment, for the reason that bonds other than the identical bonds received might, under the contract, be returned. It is not necessary in a case of this kind that the contract provide for the return of the identical bonds described in the contract, in order to render the transaction one of bailment. An agreement to return the same bonds or bonds of the same kind and quality constitutes the transaction one of bailment. See *Leach* v. *Farmers, etc., Savings Bank* (1926), 202 Iowa 885, 211 N. W. 535; *Atkins* v. *Gamble* (1868), 42 Cal. 86, 10 Am. Dec. 282; *Knapp* v. *Knapp* (1906), 118 Mo. App. 685, 96 S. W. 295.

As was said in *Rice* v. *Nixon* (1884), 97 Ind. 97, 49 Am. Rep. 430: "In all matters of contract the intention of the parties gives character and effect to the transaction, and in such a case as this the circumstances declare the intention was to make a contract of bailment and not a contract of sale."

Judgment affirmed.