ROTTGER, RECEIVER *v.* FIRST-MERCHANTS NATIONAL BANK OF LAFAYETTE.

[No. 14,504. Filed January 31, 1933. Rehearing denied May 19, 1933. Transfer denied January 31, 1934.]

*Henry M. Dowling,* for appellant.

*Carr, Wasson & Love, Fesler, Elam & Young,* and *Irving M. Fauvre,* for appellee.

*Frank C. Dailey, Perry E. O'Neal,* and *Robert A. Efroymson, amici curiae.*

WOOD, J.—During the progress of the receivership of the City Trust Company of Indianapolis, the appellee filed an intervening petition in three paragraphs, in said proceedings, asking for an order and judgment of the court allowing a claim against the insolvent estate of the trust company, and that it be ordered paid by the receiver as a preferred claim. To this petition the appellant filed an answer in three paragraphs, the first paragraph of which was a general denial. There was no reply filed to the second and third paragraphs of answer. These pleadings are quite lengthy. In as much as a resume of the facts disclosed by the briefs of counsel and the record, and concerning which there is no controversy, is hereinafter set out, it is not deemed necessary to give an extended synopsis of the facts alleged in the pleadings. For the purpose of this opinion it is sufficient to say that the theory of each paragraph of the petition was, that the City Trust Company, while a going concern, as trustee under the last will and testament of one James Fordice French, deceased, received into its possession certain moneys

and funds of said trust; that it commingled these funds with the general funds and assets of the trust company, in violation of the terms and conditions of the trust, thus augmenting its general funds and assets; that the relation of debtor and creditor was never created between the trust and banking department of the trust company, the equitable title to the funds at all times remaining in the beneficiaries under the trust; that the general funds and assets of the trust company were impressed with a trust in an amount equal to the amount of funds remaining in the trust at the time of the appointment of the receiver; that he received the general funds and assets of the trust company subject to the rights of the beneficiaries, and that the petitioner, appellee, as the succeeding trustee of the City Trust Company, was entitled to have its claim allowed as a preferred claim and ordered paid out of the general funds and assets of the trust company before the payment of general creditors. A copy of the last will and testament of James Fordice French, under the terms of which the trust was created, and the City Trust Company was appointed and acting as trustee, was made an exhibit to each paragraph of the intervening petition.

Appellant's second paragraph of answer was upon the theory, that the deposit of the trust funds with the banking department of the City Trust Company was a general deposit, was so received, was not identified or segregated, but was commingled with its general cash assets; that the identity of the fund was wholly lost and could not be identified as part of any specific property belonging to the trust; that the manner in which this fund had been treated was in keeping with a long established and well recognized custom and usage of trust companies throughout the state of Indiana; that the appellee was not entitled to a preference in payment of its claim.

Appellant's third paragraph of answer was upon the theory, that after the deposit of the funds of the trust in the banking department of the City Trust Company, and its commingling with the general cash assets of said company, the amount of its general cash assets was, previous to the appointment of the receiver, frequently reduced to an amount much less than the amount of said trust funds so deposited and that no part of such original funds passed into the hands of the receiver; that between the dates of the deposit and the appointment of the receiver, the general cash assets of the trust company were many thousands of dollars less than deposits which had been received by the banking department of said trust company from various sources as trust funds, and that appellee was not entitled to a preference in payment of its claim.

Upon these issues the cause was submitted to the court for trial. A finding and judgment was entered allowing appellee's claim and ordering it paid as a preferred claim. The appellant filed a motion for a new trial, alleging four causes therefor, the only two necessary for our consideration being (1) the decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law. This motion was overruled. Appellant appeals, assigning this action of the trial court as the only error for reversal.

The appellee has filed a motion to dismiss this appeal, assigning as reasons therefor, that a receiver is not an interested party, should be absolutely neutral in his attitude with respect to the rights of conflicting claimants; that he is a mere officer of the court, holds the funds of the estate subject to the order of the court appointing him; that the correctness of its order of distribution and disbursement of funds in his hands cannot be questioned by the receiver, and finally the authorization of an appeal by the court would not warrant

such a procedure by the receiver, if such a right did not exist in him in the first instance.

The right of a receiver to appeal from an order or final judgment of the appointing court is dependent upon the nature of the issues and facts involved in each particular case. The authorities do not attempt to declare any positive unyielding line of distinction between cases in which an appeal will or will not be allowed by a receiver and are not in harmony in recognizing the right in cases where the facts seem quite similar. The general rule adopted by the courts seems to be, that a receiver cannot appeal from discretionary instructions given by the court, having to do with the administration of the affairs of the receivership, or from interlocutory orders made during the receivership not in the nature of a judgment finally determining the rights of parties. On the other hand, the receiver does have the right to appeal from a final judgment, rendered during the administration of the receivership, in a proceeding of an adversary nature in which he is made a party litigant, which judgment affects the rights of all parties interested in the administration and final distribution of the estate of the insolvent. As we think, the better considered cases which are in accord with the weight of authority, hold that in a case where a preference is sought in the allowance and payment of claims against an insolvent estate being administered upon by a receiver, as in the case at bar, the receiver has the right to and should be permitted to appeal as was done in this case.

As expressive of our views upon this question we quote with approval the language of the court in the case of *Andrew* v. *Sac County State Bank* (1928), (Iowa) 218 N. W. 24, as follows: "So then, in fact, the appellee here is demanding that there be delivered to him his own, which is now held by the 'receiver' as part of

the estate of the defunct bank for the benefit of all creditors. To that extent attempt is made to dispossess and take away from the 'receiver' that particular 'property.'" Consequently, that officer of the court, in defending against this effort in the district court, and there defeated appealing to this court, is doing no more than protecting his title to the "property" of the "estate" against one who disputes it. Necessarily, then, the receiver is not showing mere favoritism between creditors and intermeddling in that with which he has no concern, but rather this arm of the court, so called, is functioning according to the explicit purposes of his creation for the good of the whole estate. Failing in this, he would neglect his obligation, and, without resistence, permit others, having no right, to take from him the very possessions he was appointed to preserve.

"Moreover, there has been an avalanche of similar litigation in recent years, and in many of these cases 'receivers' have 'appealed.' These have been allowed without hindrance, and final judgment rendered thereon. Thus, tacitly, if not with express avowal, we have sanctioned this procedure."

The record shows that the appellant filed a written petition praying for authority to appeal from the judgment rendered in favor of appellee; that this petition was granted, and he was authorized and empowered to prosecute this appeal in term or vacation. Pursuant to this authorization this appeal was perfected as a vacation appeal. The motion to dismiss is overruled. *Ruch* v. *Biery* (1887), 110 Ind. 444, 11 N. E. 312; *Polk* v. *Johnson* (1906), 167 Ind. 548, 78 N. E. 652; *Keener* v. *Grubb* (1909), 44 Ind. App. 564, 89 N. E. 986; *Stults* v. *Gordon* (1929), 89 Ind. App. 611, 167 N. E. 564; *Bockes* v. *Hathorn* (1879), 78 N. Y. 222; *Attorney-General* v. *North Ave. etc., Co.* (1880), 82 N. Y. 172; *People* v. *St. Nicholas Bank* (1894), 77 Hun. 159, 28 N. Y. 407;

*Thom* v. *Pittard* (1894), 62 Fed. 232; 1 Clark, Receivers (2nd Ed), 605-607-687; 2 Tardy's Smith, on Receivers (2nd Ed), §801.

In their brief, counsel for appellee question the sufficiency of appellant's motion for a new trial to present any question to the trial court from which ruling any error could properly be presented to this court for consideration upon the theory that the motion was joint in character, asking (a) for an order setting aside the judgment complained of and (b) asking of a new trial of the cause presented by the intervening petition of the appellee. The record does not sustain appellee's contention. The language in which the motion is couched is not susceptable of the construction which the appellee seeks to place upon it.

This brings us to a consideration of the case on its merits. It was stipulated between the parties that, James Fordice French was a resident of White County, Indiana. On December 22, 1928, in the office of the City Trust Company in Indianapolis, he executed his last will and testament. Under the terms of the will the trust company was appointed executor thereof, and after having administered upon said estate pursuant to the terms of the will, it was appointed as trustee to receive, *hold,* and conserve certain property in trust for the use and benefit of certain beneficiaries named, in accordance with the terms and conditions of a trust set up in said will. James Fordice French died December 28, 1928, leaving this will unrevoked and in full force and effect. It was duly admitted to probate in the White Circuit Court. The City Trust Company qualified as executor under the will, administered upon the estate, and was discharged as executor May 10, 1930. On April 18, 1930, it qualified as trustee for the purpose of receiving the property and carrying out the duties imposed upon it as such trustee under the will. On

April 18, 1930, the City Trust Company, as executor of the last will and testament of James Fordice French, in order to properly enable it to carry out and discharge its duties as trustee under the trust created by the will, turned over to itself as trustee, the sum of $90,000 in cash. The City Trust Company was organized and incorporated under the laws of this state as a trust company and in addition thereto conducted and carried on a general banking business as a bank of discount and deposit as authorized under the laws of its inception. The trust company kept a ledger in its trust department, in which it kept a large number of accounts of estates in which it was acting as trustee or in other fiduciary capacities. When the $90,000 was received by it as trustee this item was entered in "Trust Ledger No. 1, City Trust Company," and designated as "James Fordice French Trust Account." Other trust accounts in said ledger were likewise appropriately designated. In its trust department the trust company kept a record showing the amount of cash received and withdrawn from each individual trust account. On April 18, 1930, the trust company kept and maintained in its banking department, a ledger designated as "General Ledger Liabilities No. 2 City Trust Company." This ledger was composed of several divisions, among those was one where liabilities of general depositors in the banking department were kept; in another division under "Trust Department Account" and "Trust Department Account Trust Deposits," all moneys received and paid out by the trust company in its banking department from or to its trust department were entered without indicating in said ledger or elsewhere on the books of the banking department any particular trust account to which such entries were credited or debited other than "Trust Department Account" or "Trust Account Trust Deposits." On April 18, 1930, the trust department of

the trust company deposited the sum of $90,000 received from the French estate in its banking department and that department charged itself in its "General Ledger Liabilities No. 2 City Trust Company" under "Trust Department Account" or "Trust Department Account Trust Deposit" with $90,000. The trust company in its banking department, did not designate on said "General Ledger Liabilities No. 2" any trust funds with itself as trustee of the French trust, but during the entire time it was acting as trustee of said trust, it mingled all of said funds, including the balance which it had on hand at the time of the appointment of appellant as receiver, in its general assets and used the same in the conduct of its general business as a trust company. It was the uniform practice of the trust company, when it received cash in a trust estate, to receive it in its trust department, whereupon a representative of that department would deposit it in the banking department, he making out a deposit slip therefor in the name of the trust department, receiving credit in a pass book issued by the banking department to the trust department, also receiving credit in the banking department on the "General Ledger Liabilities No. 2" above referred to. No separate pass book was used for the French trust or for any other trust being administered by the trust department of the company. All these deposits were entered in the same pass book without any indication thereon to show for what particular trust the deposit was made. When withdrawing or disbursing cash in connection with any trust being administered by it, the trust department, through its proper officers would draw a voucher check upon the banking department of the company, which would be paid upon presentation to that department and by it charged to the account of the trust department. These vouchers did not indicate the particular trust out of which the disbursement was

being made. On June 2, 1930, in the due administration of said trust, the trust company, as trustee, paid out of said trust fund the sum of $46,320.32 for the purchase of United States Liberty Loan Bonds, and on June 14, 1930, it paid out the further sum of $5,000 in satisfaction of a specific bequest, leaving a balance in said trust on October 23, 1930, when the City Trust Company was closed and ceased to do business, of $38,-679.68. On November 17, 1930, when appellant was appointed receiver, he took into his possession all the assets of the City Trust Company, including all monies, choses in actions, all property, real and personal, all deposits of money with correspondent institutions belonging to it, also all funds and properties, including United States Liberty Loan bonds belonging to the French trust, as were capable of identification, belonging to trust estates which were in the possession of the trust company when it ceased to do business. On November 14, 1930, upon petition of two of the beneficiaries under said trust, the White Circuit Court removed the City Trust Company as trustee of the James Fordice French trust, appointing the appellee as its successor. The evidence discloses that on February 27, 1929, while acting as executor of the last will and testament of James Fordice French, upon its own petition asking for authority so to do, the City Trust Company was ordered to invest surplus cash belonging to said estate in United States government securities or municipal obligations of municipalities of Indiana. Again on June 12, 1930, after having qualified as trustee of the French trust, the City Trust Company, on its own petition to the White Circuit Court for instructions relative to the investment of the funds belonging to said trust, was ordered by that court to invest the trust funds of said estate, not already invested, in obligations of the United States Government, obligations of the state of

Indiana or direct obligations of any county, city, or township of the state of Indiana. This order of the court, as to the balance of $38,679.68 remaining in the trust when the trust company closed, was never complied with, but wholly ignored. At different times after the trust company qualified as trustee, its representatives discussed the matter of the investment of the trust funds with representatives of the beneficiaries under the trust, and it was advised by letter, dated May 12, 1930, that it was the wish of Mrs. French, surviving widow of the testator and one of the principal beneficiaries, that the funds be invested in United States bonds, bonds issued by the state of Indiana, or municipal bonds. For nearly eighteen months before the trust company was closed, its cash reserve had been averaging from seven to ten per cent of its aggregate amount of demand and time deposits, instead of fifteen and one-half per cent as required by law. This was a matter of general discussion at directors' meetings and among the officers of the trust company. During this entire time its resources were being gradually exhausted. The officers of the trust company were cognizant of these facts when it qualified as trustee of the James Fordice French estate, and took into its possession the sum of $90,000, which it deposited in its banking department. The amount of actual cash on hand in the banking department of the trust company varied from time to time between April 18, 1930, and October 23, 1930, on which date it amounted to $18,255.76; on this same date there was due from banks the sum of $15,026.74 representing money on deposit in other banks; whether the trust company was indebted to the banks in which these deposits were held, which debts were set off against said deposits is not clear from the evidence. On this same date the trust company also had on hand cash items amounting to $19,309.29; whether the full

amount for which they were carried was realized upon these items is not shown by the evidence. Excluding trust securities, trust real estate, and mortgage notes securing mortgage certificates, the total assets of the City Trust Company which went into the hands of the receiver on his appointment was $2,571,949.40. These assets were accumulated over a period of years. The evidence does not show the total amount of liabilities of the company on October 23, 1930. It does not trace the balance of $38,679.68 remaining in the French trust and not invested in any specific items of property going to make up the total amount of assets of the company, except as it may be presumed to be included in the actual cash money on hand when the trust company closed.

Most of the controversial questions presented by the record in the instant case were considered and disposed of by this court in the late case of *Terre Haute Trust Co.* v. *Scott* (1932), 94 Ind. App. 461, 181 N. E. 369, where the relationship between the parties, as embodied in the facts and the debate over the controlling legal principles involved were very similar.

In that case, after an investigation of the authorities, we held that the relation of trustee and *cestui que* trust is most jealously guarded by the courts; that it requires the utmost good faith on the part of a trustee, whether a corporation or an individual, the same rules applying to either; that the abuse of the trust by the trustee conferred no rights upon him, or those claiming in privity with him; that he cannot voluntarily or at his option repudiate the trust without the consent of the beneficiary; that the receiver takes the assets of a trust company subject to all legal and equitable claims of others; that the beneficiary may reclaim a trust fund so long as identification is possible, unless it has passed into the hands of a bona fide purchaser for value; that

if the fund consists of money, identification does not require that the identical bills or coins be discovered but ascertainment of the fund into which it has lodged is sufficient; that when a trustee commingles trust funds with his own funds and thereafter pays his own obligations from the funds thus commingled, the law presumes he acted from an honest purpose, and that the money thus paid out was his own money, and any amount remaining in the fund, equal to the amount held in trust, belongs to the trust fund; that a trust company acting in the capacity of trustee is necessarily required to keep a record and account of cash transactions connected with the trust, and the method employed in keeping this record can in no way jeopardize the rights of a beneficiary under the trust; that a trust company acting in the dual capacity of a trustee and a bank, cannot deposit funds held by it as trustee in its banking department, thereby creating the relation of debtor and creditor between the trust and banking departments of such trust company, to the prejudice or detriment of the beneficiary under the trust; that when a trust company receives trust funds under an express trust, which it deposits in its banking department, if, in the event of its insolvency, the cash assets of the company are sufficient to pay the claim of the beneficiary under the trust and all other claims in the same class, and if during the entire time after the depositing of the funds in the trust company's banking department, up to the time of its insolvency and closing, it had sufficient funds on hand with which to pay the beneficiary's claim, and such funds pass into the hands of the receiver, augmenting the cash assets of the trust company to that extent, the beneficiary is entitled to have his claim allowed and ordered paid as a preferred claim. We now reaffirm and adhere to those principles of law.

Upon whom rests the burden of tracing trust funds, in a case of the character now before us, was not discussed or determined in that case.

Appellant asserts that the burden rested upon the *cestui que* trust (appellee), actually to trace the trust fund held by the City Trust Co. as trustee of the French estate, at the time the receiver was appointed, into the assets of the company, which passed into his hands, thus augmenting the assets of said company so received by him, that where, as in this case, "the trustee mingled the trust fund with its own property, and questions as to the rights of third persons subsequently arise concerning the ownership of the mingled mass, the *cestui que* trust must actually, not speculatively or constructively, trace his trust fund into specific property constituting a part of the mass, or into cash which has actually come into the receiver's hands;" that this burden never shifts.

On the other hand, appellee, in its brief which is supported by an *amicus curiae* brief, maintains that: "The burden is on the beneficiaries of the trust to trace the trust funds into the general assets of the bank. Thereafter the burden is on the receiver (appellant) to show that the trust funds were dissipated and that the assets coming into his hands were not augmented by such commingling."

There is authority supporting both positions. In fact the decisions in our own state are not in harmony in those cases where the question has been discussed.

While each paragraph of appellee's intervening petition contains allegations of fact differing somewhat from the other two, the ultimate purpose and prayer of each paragraph thereof is for an order of the court allowing and directing its claim paid as preferred, upon the theory that the title to the trust fund never vested in the trustee or the banking department of the trust

company. The appellant admits that appellee is entitled to a claim for $38,369.68 under the stipulated facts and undisputed evidence in the record, but denies the right to a preference.

The actual cash assets in the till when the trust company closed was $18,255.76 It was never less than that after the trust fund was deposited. Assuming that there were no other trust funds in the trust company in the same class as that of appellee, and that under the presumption of law which prevails in appellee's favor, it would be entitled to have that entire amount of cash impressed with a trust for its benefit, what disposition was made of the balance of the $38,369.68, to wit: $20,-113.92, or where in the total mass of the assets of the trust company which passed into the hands of the receiver it reposed, and how, if at all, it augmented those assets, does not appear from the stipulated facts and the evidence.

We believe that under the rule announced in the best reasoned cases, and by the great weight of authority, the burden rested upon the appellee, to show, not only, that the trust company received the fund, but to trace that portion thereof not appearing in the actual cash assets (giving the appellee the benefit of the presumption of law), into specific items of property making up the whole mass of assets of the trust company which were taken possession of by the appellant as receiver and that such assets were thereby augmented to that extent.

If the relation of debtor and creditor had been created by the deposit of the trust funds in the banking department of the trust company, then there could be no preference given to appellee's claim.

How or in what manner the fund may have been dissipated by the trust company, if it was dissipated, whether accidently, unintentionally, or with evil pur-

pose, cannot strengthen the right of appellee to a preferred claim. It would undoubtedly under such circumstances have a right of action against appellant for a wrongful conversion of the trust fund, but any amount so recovered would be a general claim. *Tucker* v. *State ex rel.* (1880), 72 Ind. 242; *Indiana Trust Co.* v. *Griffith* (1911), 176 Ind. 643, 95 N. E. 573; *Crowder* v. *Abbott* (1931), 203 Ind. 59, 178 N. E. 860; *Leach* v. *Sanborn State Bank* (1927), 203 Ia. 401, 212 N. W. 694, 51 A. L. R. 900; *Lincoln Savings Bank* v. *Morrison* (1902), 64 Neb. 822, 90 N. W. 908, 57 L. R. A. 885; 3 Pomeroy's Equity Juris. (4th Ed.) Sec. 1080, p. 2481. Appellee's right to a preference is not founded upon any unlawful conversion of the trust fund, but upon the right of property in the fund. That is to say, that the trust company has the property in its possession, either in its original or substituted form, that it remained in the assets of the trust company as the property of the beneficiary, resulting in the augmentation of the assets of such company. These facts must be alleged and, as a necessary sequence, must be proved by a claimant seeking a preference. *Fletcher, etc., Trust Co.* v. *Bank* (1925), 196 Ind. 118, 147 N. E. 524.

If the trust company was solvent and able to pay the beneficiaries under the trust, as well as all its general creditors in full, then no difficulties would arise. But where, as here, the trust company is insolvent, and the rights of general creditors become involved, quite a different question is presented. Whatever may have been the impelling cause of a bank failure, it always results in hardship and misfortune to innocent parties, and whether they sustain the relation of beneficiaries under a trust or general depositors, does not alleviate the conditions resulting from such disasters, nor can the courts permit such circumstances to enter into their determination of the equities prevailing

between the parties. As asserted by some of the courts in discussing the respective rights of parties in this class of cases, "equality is equity," so when the rights of general creditors are entangled with those of a beneficiary under a trust, as in this case, the right to take any portion of the insolvent trustee's estate, for the benefit of the beneficiary, to the exclusion of the general creditors, must be rested upon proof, that that portion of the trust fund which the beneficiary seeks to have set aside for his preferred benefit is his property or the product of his property. It would not be logical or equitable, to divert to the beneficiary for his preference, funds or assets of the trust company, into which his funds had never passed, but which represented the accumulation of the deposits of general creditors in which the beneficiary had never had any proprietary interest.

*Windstanley* v. *Second National Bank* (1895), 13 Ind. App. 544, 41 N. E. 956, was one of the first cases where the equities, and the method of their adjustment, between parties similarily situated as in this case was discussed and announced by the courts of this state. In this case, the Windstanleys and one Breyfogle conducted a bank under the name of the "Bedford Bank." This bank received funds in a fiduciary capacity for the appellee. It made an assignment for the benefit of creditors. Upon application of appellee, its claim was allowed and ordered paid by the assignee as a preferred claim. The cause was appealed and this court in reversing the lower court denying the appellee a right to preference, in a well considered opinion which has been frequently cited, favorably commented upon, and quoted, said: "The equity rule is that the trust property may be followed by the beneficiary so long as its identity can be ascertained. If a trustee or other fiduciary wrongfully dispose of his principal's property, equity

imposes a constructive trust upon the new forms or species into which it is converted, so long as it can be traced or followed and its identity ascertained. (Citing authorities). The principle upon which this rule rests is a very plain and just one. It is founded upon the right of property. The trust property rightfully belongs to the *cestui que trust* and a change in its form does not change its ownership. So long as either the original or substituted property can be traced or followed, equity will always attribute the ownership to the beneficiary and will not allow the right to be defeated by the wrongful act of the fiduciary, no matter what form it may assume.

"The true owner of the property has a right to have his property restored to him, not as a debt due and owing, but because it is his property wrongfully withheld. As between the *cestui que trust* and the trustee and all parties claiming under the trustee, except purchasers for value and without notice all the property belonging to the trust, however much it may have been changed in its form or its nature or character, and all the fruits of such property, whether in its original or altered state, continue to be subject to and affected by the trust."

Then after discussing the development and enlargement of the equitable rules as applied to the tracing and identity of trust funds, as finally announced in the case of *Knatchbull* v. *Hallett* (1879), L. R. 13 Ch. Div. 696, this court, continuing its opinion, said: "In case of the insolvency of the fiduciary, the equitable doctrine above stated has been further expanded. If the trust property, either in its original or substituted form, can be traced into the assets in the hands of the insolvent, or of his assignee, the fiduciary may have a lien established or a preference decreed over the claims of the general creditors, although the identity of the trust funds is lost.

But in such cases it must be made to appear that the trust property is actually represented in the assets."

In the case of *Fletcher, etc., Co.* v. *American State Bank, supra,* our Supreme Court, in discussing the application of the rule of law under consideration, expressed itself in this language: "By the great weight of authority, it is the rule that the trust property must be traced into the possession of the one sought to be charged as a constructive trustee and to be lodged with such trustee in the assets of his estate in a form sufficient to be impressed with such trust at the time when such assets are transferred by operation of law from the constructive trustee to the receivers. The burden of showing such a condition of the estate was upon the *cestui que trust,* or the one who seeks such priority. The trial court erred in its conclusions of law." Citing in support of the above statement, among other authorities, *Windstanley* v. *Second National Bank of Louisville, supra.*

The following Indiana cases have adopted and applied the law as thus announced in the above cases. *McComas* v. *Long* (1882), 85 Ind. 549; *Crowder* v. *Sandusky* (1930), 91 Ind. App. 200, 170 N. E. 792; *Allen & Steen, etc., Co.* v. *Cook* (1931), 93 Ind. App. 682, 173 N. E. 860; *Mock* v. *Stultz* (1933), 96 Ind. App. 138, 179 N. E. 561; *Crowder* v. *Abbott, supra.*

Among leading cases in other jurisdictions where the same rule has been adhered to, is *Slater* v. *Oriental Mills, etc., Co.* (1893), 18 R. I. 352, 27 Atl. 443, where the court in a well considered opinion said: "The rule is clear that one has an equitable right to follow and reclaim his property, which has been wrongfully appropriated by another, so long as he can find the property, or its substantial equivalent if its form has been changed, upon the ground that such property, in whatever form, is impressed with a trust in favor of the

owner. If the trustee has mingled it with his own, he will be deemed to have used his own, rather than another's, and so to leave the remainder under the trust; and this is a sufficient identification for the owner. But in this case we are asked to go further and to hold that where one's property has been wrongfully applied and dissipated by another a charge remains upon the estate of the latter for the amount thus wrong-fully taken, upon the ground that his estate is thereby so much larger and that the trust property is really and clearly there, in a substituted form, although it cannot be directly traced. This view is pressed with much skill and some authority, but we are unable to adopt it.

"While one who has been wronged may follow and take his own property, or its visible product, it is quite a different thing to say that he may take the property of somebody else. The general property of an insolvent debtor belongs to his creditors, as much as particular trust property belongs to a *cestui que trust*. Creditors have no right to share in that which is shown not to belong to the debtor, and conversely the claimant has no right to take from creditors that which he cannot show to be equitably his own. But right here comes the argument that it is equitably his own because the debtor has taken the claimant's money, and mingled it with his estate, whereby it is swelled just so much. But, as applicable to all cases, the argument is not sound. Where the property or its substantial equivalent remains, we concede its force; but where it is dissipated and gone, the appropriation of some other property in its stead simply takes from creditors that which clearly belongs to them. . . . Suppose the general estate consists only of mills and machinery acquired long before the complainant's money was appropriated. Upon what principle could that property be taken to reimburse them? But the complainants say: 'Our money

has been misappropriated by the debtor without our consent and without our fault; why should we not be reimbursed out of his estate?' Undoubtedly it is right that everyone should have his own; but, when a claimant's property cannot be found, this same principle prevents the taking of property which equitably belongs to creditors of the trustee to make it up. The creditors have done no wrongful act, and should not be called upon, in any way, to atone for the misconduct of their debtor. It is an ordinary case of misfortune on the part of claimants, whose confidence in a trustee or agent has been abused.

"In examining the question upon authority we think it is equally clear that there can be no equitable relief except in cases where the fund claimed is in some way apparent in the debtor's estate. The fact that the *cestui que trust* has not entered into the relation of debtor and creditor with the trustee does not affect the question. So long as he seeks to recover what he can show to be his own, he is in the position of an owner; but when he cannot do this and seeks to recover payment out of the trustee's general estate he is in the position of a creditor."

The United States Courts have adopted the rule requiring beneficiaries under a trust seeking preference from an insolvent's estate, to trace the trust fund into specific items of the mass of assets of such estate taken possession of by the receiver. In the case of *Dickson* v. *First National Bank* (1928), 26 Fed. (2nd) 411, the court in its opinion quoted from *Empire State Surety Co.* v. *Carroll County* (1912), 194 Fed. Rep. 593, the following declaration of the law: "It is indispensable to the maintenance by a *cestui que trust* of a claim to preferential payment by a receiver out of proceeds of the estate of an insolvent that clear proof be made that the trust property or its proceeds went into a specific

fund or into a specific identified piece of property which came to the hands of the receiver, and then the claim can be sustained to that fund or property only and only to the extent that the trust property or its proceeds went into it. It is not sufficient to prove that the trust property or its proceeds went into the general assets of the insolvent estate and increased the amount and the value thereof which came to the hands of the receiver," and continuing its opinion the court quoted from *Farmer's National Bank* v. *Pribble* (1926), 15 Fed. (2nd) 175 as follows: "The fact that the claimant's property paid or reduced the indebtedness or liability of the insolvent corporation, so that it will pay a larger percentage of its debts, justifies no lien on its assets by or preference in payment to the *cestui que trust* (1) because such a reduction of indebtedness does not increase the property or the value of the property of the insolvent; and (2) because the property of the claimant so used to pay a part of the insolvent's general indebtedness or liability never goes into, and therefore cannot be traced into, the property or assets of the insolvent which subsequently come into the possession of the receiver."

Without reviewing or quoting further from specific authorities, we cite in support of, and in harmony with those above cited, and quoted from, the following cases, to which many more could be added, did we deem it necessary. *Hanover* v. *Thomas* (1928), 217 Ala. 494, 117 So. 42; *Leach* v. *Iowa State Savings Bank* (1927), 204 Ia. 497, 212 N. W. 748; *Dugan* v. *Security, etc., Bank* (1928), 205 Ia. 171, 217 N. W. 831; *Nelson* v. *Paxton* (1923), 113 Kan. 394, 214 Pac. 784; *Horner* v. *Hanover State Bank* (1923), 114 Kan. 123, 216 Pac. 822; *Ober* v. *Cochran* (1902), 118 Ga. 396, 45 S. E. 382; *Lauterman* v. *Travous* (1898), 174 Ill. 459, 51 N. E. 805; *Little* v. *Chadwick* (1890), 151 Mass. 109, 23 N. E.

1005; *Salem Elevator Works* v. *Commission of Banks* (1925), 252 Mass. 366, 148 N. E. 220; *Drovers' Bank* v. *Roller* (1892), 85 Md. 495, 37 Atl. 30; *Italian Fruit Co.* v. *Penniman* (1905), 100 Md. 698, 61 Atl. 694; *Board* v. *Wilkinson* (1899), 119 Mich. 655, 78 N. W. 893; *American Employee's Ins. Co.* v. *Maynard* (1929), 247 Mich. 638, 226 N. W. 686; *Reichart* v. *United Savings Bank* (1931), 255 Mich. 685, 239 N. W. 393; *Shields* v. *Thomas* (1893), 71 Miss. 260, 14 So. 84; *Bank Commissioners* v. *Trust Co.* (1900), 70 N. H. 536, 49 Atl. 113; *Cavin* v. *Gleason* (1887), 105 N. Y. 256, 11 N. E. 504; *Cherry* v. *Territory* (1906), 17 Okla. 221 89 Pac. 192; *Yeldell* v. *Peoples Bank* (1921), 118 S. C. 442, 110 S. E. 789; *Clinton, etc., Co.* v. *Trust Co.* (1915), 35 S. D. 253, 151 N. W. 998; *Hornick* v. *Farmer's, etc., Bank* (1929), 56 S. D. 18, 227 N. W. 375; *Nonotuck* v. *Flanders* (1894), 87 Wis. 237, 58 N. W. 383; *Macy* v. *Rodenbeck* (1915), 227 Fed. 346, L. R. A. 1916C, 12 (see note) ; *Marshburn* v. *Williams* (1926), 15 Fed. (2nd) 589; 30 Michigan Law Review. 441-983; Yale Law Review. 992; 19 Law Review. 511.

We conclude therefore, in the instant case, that the appellee, together with other claimants, if there are any, in the same class, is entitled to have a trust impressed upon the actual cash assets remaining on hand in the City Trust Company, when appellant was appointed receiver and passing into his possession, thus augmenting the assets of the estate of the insolvent, as a preferred claim, and if during the administration of the receivership, it is determined that there are other claimants in the same class as appellee and their claims are duly allowed as such, that said cash assets should be pro rated among all such claimants in proportion to the amount of their respective claims. That the balance of appellee's claim remaining unsatisfied after the application of its portion of the cash assets

thereon, should be allowed as a general claim, unless the appellee can actually trace the funds belonging to the trust which it represents, into specific items of property composing the entire mass of assets passing into the receiver's hands, thereby augmenting same in any amount so traced; that as to any such amounts thus traced, appellee is entitled to have a preferred claim declared in its favor.

In support of their contention, counsel for appellee cite and rely upon the case of *Indiana Trust Co.* v. *International Bldg. & Loan Assn.* (1905), 165 Ind. 597, 76 N. E. 304. There the court did give expression to a correct statement of law, but it is not applicable to the facts here. They also cite and depend upon *State ex rel.* v. *Farmers, etc., Bank* (1919), 71 Ind. App. 216, 124 N. E. 501; *Reserve Loan Life Ins. Co.* v. *Dulin* (1922), 82 Ind. App. 630, 135 N. E. 590; and *Stults* v. *Gordon, supra,* to sustain their position. While the language of the court in the case of *State ex rel.* v. *Farmers, etc., Bank,* is not clear and explicit, it does inferentially sustain appellee's position. This interpretation of the court's statement is given weight by reason of the fact, that it cites and relies upon the case of *McLeod* v. *Evans* (1886), 66 Wis. 401, 28 N. W. 173, which is in complete accord with appellee's contention, as authority for the statement there made. In the case of *Stults* v. *Gordon,* this court quoted with approval from *City of New Hampton* v. *Leach* (1926), 201 Ia. 316, 207 N. W. 348, the following statement, "If a trust fund is established, a presumption arises that it was retained in the possession of the trustee and came into the hands of the receiver, and the burden is upon the receiver to overcome this presumption." This statement, segregated from the other language of the opinion from which it is taken, is misleading and inapt, for when construed with the entire opinion cannot be given the construc-

tion this court seems to have attributed to it. In that case appellant had filed a claim asking for preference. It was dismissed on the ground that the facts alleged in the petition setting up the claim were not sufficient to entitle the claimant to preference. The holding of the lower court was reversed and the cause remanded for trial on its merits. In its petition the appellant, among other facts, alleged: "5. That all of said moneys are now in the hands of the receiver, and that the assets of said bank coming into the hands of said receiver were more than the indebtedness owed to said city, and greatly in excess of the amount of the claim in suit. 6. That the assets of the bank were increased, augmented, and bettered in the amount of the sums received by it from the claimant, and its treasurer, and that the assets of said bank which reached the hands of the receiver were augmented, bettered, and increased by said deposits by the claimants."

In addition to the statement from the opinion quoted by this court, as above set out, the Iowa court said: "We think that the allegations, if sustained by competent proof, would establish a constructive trust, and that, if the trust funds are traceable into the hands of the receiver so as to augment the assets of the bank in his hands, a preferential claim exists. . . . General creditors have no right to subject trust funds, to which the receiver acquired no title, to the payment of debts owed by the insolvent bank, nor does the mere mingling of the trust fund with the assets of the bank destroy the trust character. It is said in *Hudspeth* v. *Union Tr. & Sav. Bank,* 197 Iowa 913, . . . it must affirmatively appear, by presumption or otherwise, that the trust fund has not been dissipated, but has come into the hands of the receiver either as a distinct traceable account or fund, or as an augmentation of the estate as a whole." Clearly indicating that the court had in mind

and applied, in determining the sufficiency of the petition to state facts entitling the claimant to a preference, the rule adopted and adhered to by a majority of the courts in this country, and which has been consistently followed in the Iowa cases heretofore cited.

In the case of *Reserve Loan, etc., Co.* v. *Dulin,* this court announced as the correct guide, and the one followed by the courts of Indiana, the rule for which appellee contends, citing as authority, *State ex rel.* v. *Farmers, etc., Bank, supra,* decided in 1919. In the case of *Reserve Loan, etc., Co.* v. *Dulin,* the correctness of that rule was challenged and this court's attention was called to the fact that the case of *McLeod* v. *Evans,* decided by the Supreme Court of Wisconsin in 1886, which was cited as authority to sustain the court's opinion in *State ex rel.* v. *Farmers, etc., Bank,* was expressly overruled by the Supreme Court of Wisconsin in the case of *Nonotuck Silk Co.* v. *Flanders, supra,* decided in 1894. Answering that challenge, this court said: "It is true that said case has been overruled, there being a dissenting opinion from the majority of the court, and it is a fact that it has been followed and that it has been criticised in other states. There has been much fluctuation and want of harmony in cases involving the principle here discussed. Many of them are annotated in L. R. A. 1916C p. 53, et seq., from which it appears that the weight of authority in other states is against the rule announced in *State ex rel.* v. *Farmers, etc., Bank, supra.* But that case is in harmony with the rule which has been followed in this state." Continuing its opinion, this court cites and reviews several Indiana cases as upholding its views, among them the case of *Miller* v. *Stephenson* (1901), 27 Ind. App. 271, 59 N. E. 398, in which case the court is said to have cited and quoted a statement from *Windstanley* v. *Second National Bank, supra.* It is apparent from an

examination of the cases so cited and reviewed by this court, in *Reserve Loan Ins. Co.* v. *Dulin,* that they do not add any weight to the court's opinion in that case but rather detract therefrom. In fact, the quotation from *Windstanley* v. *Second National Bank,* attributed to the court in the case of *Miller* v. *Stephenson,* was not quoted in the majority opinion of the court in that case, but appears in a dissenting opinion written by Judge Roby and concurred in by C. J. Black on a petition for rehearing.

In the case of *Windstanley* v. *Second National Bank, supra,* decided in 1895, this court was urged to adopt and apply the rule announced in *McLeod* v. *Evans* in deciding that case. This the court refused to do, thus expressing its reason: "We are of the opinion that the latter cases have reached an extremity that can scarcely be upheld upon equitable and just grounds. It is the purpose of equity to do justice, and it should not be perverted so as to work injustice. Thus if an agent collect a thousand dollars for his principal and, without commingling it with his own funds, invest it in a speculation and lose it, and then fails, the trust funds are not represented in his assets, and it would be inequitable to his general creditors to give the beneficiary a preference. If the agent should take the money and apply it to the payment of his debts, or use it for other purposes, so that it is consumed, it would then form no part of his estate. The beneficiary under such circumstances is not equitably entitled to a preference. Whilst it is true that in using the money to pay his debts it may have inured to the benefit of the estate, still this may be said of all contract debts. 'In a very general sense, all creditors of an insolvent may be supposed to have contributed to the assets which constituted the residuum of his estate.' "

The cases of *State ex rel.* v. *Farmers, etc., Bank,*

*supra; Reserve Loan Ins. Co.* v. *Dulin;* and *Stults* v. *Gordon, supra,* are not in harmony with the better reasoned cases in this state, and the great weight of authority, in the announcement and application of the rule of law now under consideration, and in so far as they conflict with the announcement and application of the rule adopted and applied in the case in hearing they are overruled.

As has already been suggested, with exception of that portion of the trust fund which the law presumes remained in the cash assets of the City Trust Co., there are no facts stipulated between the parties nor is there any evidence in the record, from which the court could determine what disposition was made of the balance of the trust fund remaining in the French trust. The party who would invoke the judgment of the law, must produce facts which will support such judgment. The evidence in this case is not sufficient to sustain the judgment of the court and it is contrary to law.

Judgment reversed with instructions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.