INDIANA TRUST COMPANY, EXECUTOR, v. INTERNATIONAL BUILDING & LOAN ASSOCIATION NO. 2.

[No. 20,734. Filed December 8, 1905.]

1. BUILDING AND LOAN ASSOCIATIONS.—*Officers.*—*Secretary.*— *Collections.*—*Recovery.*—Where the secretary of a building and loan association under color of his office receives money belonging to such association, he is accountable therefor to such association. p. 606.

2. SAME. — *Officers.* — *Collections.* — *Deposits Made Officially.*— Money received by the secretary of a building and loan association from its treasurer and deposited by such secretary in his name as secretary belongs to such association, and a succeeding secretary can check such money for such association. p. 606.

3. BANKS AND BANKING.—*Official Deposits.*—*Private Application.* —A deposit made by the secretary of a corporation in his name as secretary can not be applied by the bank on such secretary's private account. p. 607.

4. CONFUSION OF GOODS.—*Bank Deposits.*—Where a secretary of a corporation deposited its funds in his name as secretary and afterwards mingled his individual funds therewith so that the deposits were not distinguishable, the doctrine of confusion of goods applies.   p. 607.

5. BUILDING AND LOAN ASSOCIATIONS. — *Secretary Receiving Money from Treasurer.—Use of.*—Where the secretary of a building and loan association receives money, though irregularly, from the treasurer thereof, and uses it for such association, such money can not be afterwards recovered from such treasurer, and especially where such association had granted such treasurer an indefinite leave of absence and knew that such secretary was receiving and paying out money regularly in the transaction of the business.   p. 607.

From Marion Circuit Court; *Austin F. Denny,* Special Judge.

Action by the International Building & Loan Association No. 2 against the Indiana Trust Company as executor of the will of Norman S. Byram, deceased.   From a judgment of the Appellate Court (36 Ind. App. 6) reversing in part a judgment for plaintiff, plaintiff appeals under subd. 3, §1337j Burns 1901, Acts 1901, p. 565, §10. *Affirmed in part and reversed in part.*

*Ayres, Jones & Hollett* and *Nelson, Myers & Yarlott,* for appellant.

*Chambers, Pickens, Moores & Davidson* and *Harding, Hovey & Wiltsie,* for appellee.

JORDAN, J.—The International Building & Loan Association No. 2, appellee herein, filed in the office of the clerk of the Marion Circuit Court a claim against the estate of Norman S. Byram, deceased, itemized as follows:

"June 2, 1902.   Cash balances as treas-
urer of the association. . . . . . . . . . . $1,186.48
June 30, 1898.   To loan. . . . . . . . . . .   6,000.00
                 Interest on the above
                 loan at 6%. . . . .   1,555.00
                                       ───────────
                 Total. . . . . . . . . . . . . $8,741.84"

NOVEMBER TERM, 1905.                599

Indiana Trust Co. *v.* International, etc., Assn.—165 Ind. 597.

This claim was not allowed by appellant, the executor, consequently it was transferred to the trial docket of the Marion Circuit Court. Appellant appeared and filed an answer of counterclaim in five paragraphs, the first of which was for money laid out and expended by the decedent, Norman S. Byram, as treasurer of the plaintiff association at its special instance and request, in the sum of $5,000.

The second was for money had and received from the decedent, Byram, at the special instance and request of plaintiff in the sum of $5,000.

The third paragraph counted upon a check for $5,000, drawn by Byram, as the treasurer of plaintiff, on June 5, 1894, upon the funds of appellee association in his hands as such treasurer, to the order of Charles Schurmann, the secretary of appellee, and that the amount of said check was received by said Schurmann as secretary and agent of the plaintiff for its use and benefit, and was so applied and used, and that the defendant never had any credit therefor.

The fourth and fifth paragraphs are similar. The latter is based upon the alleged fact that Charles Schurmann was secretary of plaintiff association, and as such was authorized to receive and disburse its moneys; that on June 5, 1894, the decedent, Byram, then treasurer of the plaintiff association, was about to make an extended journey of uncertain duration for the benefit of his health; that, in order to place the funds of the association then in his hands as said treasurer in such a shape that they might be available in carrying on the business of the association in his absence, on said 5th day of June, 1894, he, as treasurer, executed or drew, to the order of said Schurmann, a check for $5,000 upon the funds of plaintiff in his hands; that while such check did not by its terms designate said Schurmann as secretary of plaintiff, it was in point of fact executed to and accepted by him, and the money received

600     SUPREME COURT OF INDIANA,

Indiana Trust Co. *v.* International, etc., Assn.—165 Ind. 597.

thereon by him was in his said capacity of secretary of plaintiff; that decedent never received any credit for it, or any part thereof.

All the paragraphs of the counterclaim apparently show that the demand therein set up arises out of the same matter and transaction as embraced in plaintiff's cause of action, being a settlement of the account of the decedent as the treasurer of plaintiff. The defendant, appellant herein, also answered by way of set-off in five paragraphs, setting up the same matter as alleged and set out in the respective paragraphs of the counterclaim. Appellee unsuccessfully demurred to each paragraph of the counterclaim and to each paragraph of the set-off.

It appears that there were two International Building & Loan Associations—numbered one and two—each being officered by the same persons. There was a claim pending at the same time against appellant in favor of association No. 1 for an alleged balance due from Byram as treasurer. These two causes were consolidated and tried together under a certain stipulation and agreement made by the parties. The judgment herein rendered covers and embraces the claims filed in both of the causes so consolidated. Issues were joined between the respective parties upon the pleadings filed, and the court, on request, made a special finding of the facts and stated, adversely to appellant, its conclusions of law thereon. Over appellant's exception to each of the conclusions and over its motions for a *venire de novo* and for a new trial, judgment was rendered against appellant for $9,231. From this judgment appellant appealed to the Appellate Court.

The latter court adjudged upon the facts disclosed by the special findings that appellant, as executor of the will of Byram, was entitled to be credited with the $5,000 turned over by the testator, or decedent, to Charles Schurmann, secretary and agent of appellee association. The judgment of the trial court was accordingly reversed, with

instructions to restate its conclusions of law to that effect. To reverse this judgment of the Appellate Court is the purpose and object of this appeal on the part of appellee.

After eliminating from the special findings certain conclusions, we extract therefrom the following facts: The International Building & Loan Association No. 1 was organized as a corporation under the laws of this State in 1889. The International Building & Loan Association No. 2 was in like manner organized in the year 1891. Norman S. Byram was the treasurer and Charles Schurmann was the secretary of both of these associations, the former serving as such treasurer from the time of the organization of the respective corporations until the date of his death, hereinafter stated. Charles Schurmann acted and served as secretary thereof from the date of the organization of the associations until the time of the trial of this cause. Said treasurer and secretary were directors in each of said associations, and the latter were officered in all respects by the same persons. The by-laws for the control of each association were alike.

The duties of the secretary in the main were to receive all moneys paid into said associations and to pay the same over to the treasurer each day, taking his receipts therefor; to keep all accounts of the associations; to draw and sign all orders on the treasurer; to keep the books at all times subject to the inspection of the board of directors; to see to the settlement of all claims and bills; to have the appointment and general supervision over all employes, agents and agencies; to be the custodian of all mortgages, deeds, etc., and once in each quarter to compare his books with those kept by the treasurer and to report discrepancies to said board.

The duties of the treasurer were to receive all moneys from the secretary; to pay all orders drawn upon him by the president and secretary; to keep a correct account of all moneys received and paid out; to be the custodian of

all bonds received for loans and other securities not in the custody of the secretary; when required, to make a statement of the business of the office to the board; and to compare his books once each quarter with those kept by the secretary, reporting discrepancies to the board.

On June 4, 1894, Byram, the testator, was in poor health, and had made arrangements to sojourn indefinitely in the state of California. The directors of both the aforesaid associations on said day, by a formal resolution, granted him an indefinite leave of absence. No record, however, was made as to the manner in which the business of the association should be carried on during his absence. On the following day, June 5, he drew a check against the funds of the associations in his hands, in terms as follows: "Indianapolis, Indiana, June 5, 1894, No. 6. Merchants National Bank: Pay to the order of Charles Schurmann $5,000. N. S. Byram, treasurer." At the same time he wrote on the back of said check as follows: "This check was given by me to Mr. Schurmann against the funds of the Nat. Bldg. Assn. for which he gave me no receipt, and he is indebted to me or to the association to that amount; he has a memo. of the same in tin box in secretary's office. N. S. Byram." He delivered this check to Charles Schurmann, and he and said Schurmann went together to the Merchants National Bank, in the city of Indianapolis, where Schurmann indorsed the check, and thereupon opened a deposit account with said bank, under the name and style of "Charles Schurmann, secretary." In the presence of Byram, Schurmann deposited the check in the bank, and received credit on said deposit account for $5,000. Schurmann, in making said deposit, stated to the bankers that it was a building and loan account. At the time he received the check from Byram he was secretary of said associations and a director thereof. After making this deposit, as aforesaid, up to October 14, 1903, Schurmann deposited in said account sums and balances in his

hands as secretary of each of said associations, without separating the funds of one association from those of the other, or from other funds deposited by him.

After June 5, aforesaid, he drew checks on said deposit account in payment of the expenses of said associations, in the payment of warrants turned over by him to the treasurer as cash, and in payment of balances due from him in sundry settlements with the treasurer. Byram was not credited with the proceeds of said check, nor was Schurmann charged with the same upon any of the books of said associations.

On June 5, 1894, Byram, as treasurer, had of the funds of the International Building & Loan Association No. 1, $18,854.78, and of the funds of the International Building & Loan Association No. 2, $4,861.91. For some time prior to June 4, 1894, and after said date, Schurmann, as secretary, did not pay over at the end of each day to the treasurer all money which had been paid into said associations, but from time to time out of the moneys so received he paid warrants drawn upon the treasurer, which warrants were afterwards turned over to the treasurer as cash, the latter receipting therefor as stated.

Said secretary kept an account of his receipts and of his payments, treating warrants paid by him, as aforesaid, as money; kept all accounts of the associations, including an account between the treasurer and said associations, which were made up from his payments to the treasurer and reports made by the latter; he kept the books of the associations, which were at all proper times subject to the inspection of the board of directors. The treasurer also kept an account in what was designated as "Byram's ledger," from which he paid warrants received by him, which were treated as cash.

Schurmann was not secretary of any building association other than the two herein mentioned. Both Schurmann, as secretary, and Byram, as treasurer, of the associations

604    SUPREME COURT OF INDIANA,

Indiana Trust Co. v. International, etc., Assn.—165 Ind. 597.

in question, kept in proper books the separate financial accounts thereof, which accounts in their ledger form disclose the amounts and items for which Schurmann was chargeable, and for which he was entitled to credit in favor of and against said two associations respectively, and the amounts and items for which Byram was chargeable and for which he was entitled to credit in favor of and against said two associations respectively. In none of these accounts were the proceeds of the $5,000 check of June 5, 1894, or any part thereof, credited to Byram as treasurer or charged to Schurmann as secretary, and said treasurer never received credit in either of said associations for said sum of $5,000, or any part thereof. Byram died in Marion county, Indiana, on the 16th day of June, 1902.

There are other facts found to show that on the 20th day of June, 1898, the board of directors of plaintiff corporation, at a meeting at which Byram was present, authorized a loan to be made to Byram of $6,000, upon an oral application, and without specifications of any terms, conditions, securities or written evidence of such loan. It appears that Byram received this money and credited his account as treasurer with $6,000, the amount of said loan, of the date of June 30, 1898. The court finds that the credit of said $6,000 was solely for and on account of said loan to Byram, and that no part of the principal, nor of the interest thereon has been paid to the plaintiff or to any other person in its behalf.

The contention of appellee's counsel is that the transaction between Byram and Schurmann in regard to the check for $5,000 was but a mere private matter between these parties, not as officials, but simply as individuals. This insistence, however, is not justified by the facts. In the light of the latter it certainly can not be presumed that Byram, as treasurer of the associations, was drawing a check upon its funds for $5,000 for the private or personal benefit of Schurmann. It is true that the check was not,

NOVEMBER TERM, 1905. 605

Indiana Trust Co. *v.* International, etc., Assn.—165 Ind. 597.

in express terms, made payable to Schurmann, as secretary; but when the whole transaction is viewed in the light of the facts and circumstances which disclose that Byram delivered the check in controversy to Schurmann, that they went together to the Merchants National Bank, and after indorsing the check Schurmann then and there, in the presence of Byram, opened an account with the bank, not in his individual name, but under the name and style of "Charles Schurmann, secretary," and deposited the proceeds of the check in question as a part of that account, and was credited by the bank with the amount of the check so deposited, not to his individual, private account, but to his official account as secretary, the transaction was an official one. While the particular association of which he was secretary is not disclosed by the bank account, nevertheless the facts show that he was at the time the secretary of the two building and loan associations in question, and of no other, and that the bank understood and treated the deposit as one in favor of the associations.

After opening the deposit account at the bank, Schurmann, as secretary, appears to have drawn various checks against this deposit account in payment of the expenses of the associations in controversy and in payment of warrants drawn by them, as was his custom to do. It is undisputed that the $5,000, before it was transferred, by the method shown, from Byram's account as treasurer of the associations, belonged to and was the money of the latter. The transfer thereof, under the circumstances, from his custody as treasurer to Schurmann's, and by the latter deposited in the bank as a credit to his official account as secretary, certainly did not serve to operate to deprive the associations of the ownership of the money. In a figurative sense it may be said that the transaction between Schurmann, the secretary, and Byram, the treasurer, operated only to take the money from one pocket of the association and place it in the other pocket.

While, possibly, it may be said that it was an irregularity on the part of Byram, as treasurer, to have transferred the money in question to Schurmann, nevertheless, when tested by the acts of the latter, he appears to have received it, if not by virtue of his official position as secretary, or in his strict right as such official, he at least received the money from Byram under color of his official position, and so deposited it in the bank. Under the circumstances, the association would have the right to require him, as its official, to account to it for the money had he misapplied it or converted it to his own use. *Tyler* v. *Old Post Bldg. Assn.* (1882), 87 Ind. 323, and cases cited.

The facts in the case, as herein stated, in effect at least, show that Schurmann was the general manager of the association or corporation. He received all money paid in for the benefit of the association. If the $5,000 in controversy had been turned over to him for the association by any person other than Byram, the treasurer, there would be no room whatever for the contention that the association was not bound by his receipt of the money as its agent. He, by depositing the money in the bank as shown, to the account of "Charles Schurmann, secretary," thereby recognized and gave notice of the character in which he received and held the money. *Bundy* v. *Town of Monticello* (1882), 84 Ind. 119; *Bank of Northern Liberties* v. *Jones* (1862), 42 Pa. St. 536; *National Bank* v. *Insurance Co.* (1881), 104 U. S. 54, 26 L. Ed. 693. If Schurmann's position as secretary had terminated after depositing the $5,000 in the bank, his successor in office would have been entitled to check out the money for and on behalf of the association. *Carman* v. *President, etc.* (1883), 61 Md. 467; *Gaffney's Estate* (1892), 146 Pa. St. 49, 23 Atl. 163.

Under the circumstances the bank would not have been justified in applying any portion of the $5,000 to Schurmann's indebtedness. There is no finding to the effect that Schurmann used for his own individual benefit any part of the money in controversy after he deposited it in the bank, and no presumption to that effect can be indulged. This deposit account, which he as secretary opened in the first instance by means of the proceeds of the check in controversy as previously said, was an official deposit impressed with a trust. If he thereafter mixed or confused his own money with this trust fund, and was unable to distinguish or to furnish the means for separating his money from the trust fund, he must bear the consequences which may result from the confusion of funds. *Pearce* v. *Dill* (1897), 149 Ind. 136; *National Bank* v. *Insurance Co., supra.*

There is nothing to disclose that the associations lost any of the money transferred from Byram to Schurmann, or in any manner have been damaged by the transaction, but on the contrary it is made to appear that these corporations have received the benefit thereof. Under such circumstances they are not in a position successfully to avail themselves of the irregularity of the transfer of the money to Schurmann, the secretary and general manager. *Tyler* v. *Old Post Bldg. Assn., supra; Bass Foundry, etc., Works* v. *Board, etc.* (1888), 115 Ind. 234, 244; *Rowe* v. *Major* (1883), 92 Ind. 206; *Chicago Bldg. Soc.* v. *Crowell* (1872), 65 Ill. 453; *Kilpatrick* v. *Home, etc., Assn.* (1888), 119 Pa. St. 30, 12 Atl. 754; *O'Malley* v. *People's, etc., Sav. Assn.* (1895), 35 N. Y. Supp. 14; *Peterson* v. *People's, etc., Sav. Assn.* (1900), 124 Mich. 573, 83 N. W. 606; Parsons, Contracts (9th ed.), *139.

When all of the facts in the case are considered, it is evident that the associations in question had knowledge, if not actual, at least constructive, relative to the manner in which the affairs were conducted. It appears that the treas-

608     SUPREME COURT OF INDIANA,

Indiana Trust Co. *v.* International, etc., Assn.—165 Ind. 597.

urer had been granted an indefinite leave of absence, consequently it must have been known that when absent he was not receiving funds each day from Schurmann, and was not paying warrants of the associations at the city of Indianapolis, but that these duties were being discharged by Schurmann. It is disclosed that the associations had auditing, finance and examining committees, upon which devolved an examination of the books and the affairs of the concerns. It would be strange indeed if these associations, through the means of these agencies, did not discover that Schurmann had an official bank account, out of which the expenses of the associations and drafts thereon were paid by him as secretary. If the course of the business of the associations in regard to these matters were of such a character as to put them on inquiry, that, in a legal sense, would be sufficient to charge them with notice. *Webb* v. *John Hancock, etc., Ins. Co.* (1904), 162 Ind. 616, 66 L. R. A. 632; Thompson, Corporations, §§5222, 5224, 5237.

We are fully satisfied that Byram's estate, under the facts found by the court, is liable for the payment of the $6,000 borrowed by the decedent from the association. We conclude that the judgment of the Appellate Court, reversing in part the judgment of the Marion Circuit Court, is right, and it is therefore affirmed. The judgment of the Marion Circuit Court is therefore reversed in part, and the cause is remanded, with instructions to that court to restate its conclusions of law to the effect that Byram's estate, as represented by the appellant herein, is entitled to a credit of $5,000 on the amount found to be due on the general claim presented against said estate in this action and to render its judgment accordingly.

The judgment of said court in all other respects is affirmed.