Annette **GALLIGAN**, Charles Galligan, and Jennifer Galligan, Appellants (Plaintiffs Below),

v.

Thomas **GALLIGAN** and Larry Rice, Appellees (Defendants Below),

Irish Park, Inc. and the Money Store Investment Corporation, Defendants Below,

Golden Shamrock, Inc., Intervening Plaintiff Below.

No. 10S01–0004–CV–261.

Supreme Court of Indiana.

Feb. 2, 2001.

---

Joni L. Grayson, Jeffersonville, Indiana, Attorney for Appellants.

Kyle P. Williams, Jeffersonville, Indiana, Gary K. Kemper, Madison, Indiana, Attorneys for Appellees.

## ON PETITION FOR TRANSFER

BOEHM, Justice.

This case deals with the effect of a corporation's failure to follow statutory requirements in a sale of substantially all of its assets.

### Factual and Procedural Background

Irish Park, Inc. is an Indiana corporation operating a family-owned construction business. It was founded by Thomas R. Galligan in 1983. From its inception, Galligan has apparently owned fifty-two of the one hundred issued shares and his four children, Annette, Charles, Jennifer, and William, have owned twelve shares each. Galligan served as president and director of Irish Park until January 1996, when he resigned both positions, and Larry Rice, a long-time employee and member of the board, became president. Galligan's ex-

wife, Jo Ann, apparently remained as the only other director. In 1994, Rice and Galligan formed a second corporation, Golden Shamrock, Inc., to engage in hauling aluminum. Galligan owned eighty-five percent of the shares and Rice owned the remaining fifteen percent.

By the end of 1996, Irish Park was struggling. It owed more than $750,000 in bank debt and had assets estimated to be worth only approximately $250,000. According to the minutes of a later meeting, this balance sheet severely impaired the company's ability to get new contracts. In January 1997, Galligan sold his Golden Shamrock shares to Rice for one dollar and the assumption by Golden Shamrock of some of Irish Park's obligations. At about the same time, Rice and Galligan started negotiations directed towards a sale of all of Irish Park's assets to Golden Shamrock.

On May 23, 1997, Galligan and Golden Shamrock entered into an agreement whereby Golden Shamrock would purchase all of Irish Park's assets and also real and personal property owned by Galligan individually. At that time, Galligan remained the majority shareholder of Irish Park, but was neither an officer nor a director of either Irish Park or Golden Shamrock. The transaction was closed on May 30, 1997. None of the actions required by the Indiana Business Corporation Law for a disposition of substantially all of Irish Park's assets were taken. There was no recommendation by the Board, no notice to shareholders, and no shareholder vote on the transaction. Indeed, it is not clear from the record who comprised the Board of Irish Park at that point. On August 15, 1997, three of the four minority shareholders, Annette, Charles, and Jennifer, filed suit against Irish Park, Galligan, and Rice for fraud, breach of fiduciary duty, conspiracy to misappropriate funds, and employment claims. The complaint was later amended to add allegations of self-dealing and a claim that the sale was ultra vires.

In response to the complaint, Galligan, as majority shareholder, sent a notice to all the shareholders of a special shareholder meeting to be held March 11, 1998. The purpose of this meeting was stated to be the removal of the board, election of a new board, and ratification of the asset sale. On March 10, the minority shareholders served a "Shareholders' Notice Asserting Dissenters Right," addressed to Galligan, Jo Ann, Rice, and Irish Park, in which they objected to the asset sale and sought to assert their dissenters' rights pursuant to Indiana Code section 23–1–44–8. Galligan was the only shareholder who attended the March 11 meeting. Acting as a shareholder, he elected himself as the sole director. Then, as director, he elected himself president and secretary of Irish Park. Finally, as a shareholder, Galligan voted to ratify the asset sale.

After these corporate actions were taken, the defendants filed a motion for partial summary judgment, contending that the plaintiffs were limited to dissenters' rights under the doctrine set forth in *Fleming v. International Pizza Supply Corp.,* 676 N.E.2d 1051, 1056–57 (Ind. 1997). The plaintiffs responded with their own motion for partial summary judgment asking the court to rule that: (1) Rice was an officer or director of Irish Park at the time of the asset sale; (2) the asset sale was voidable because of Rice's conflict of interest; (3) Rice breached his fiduciary duties as an officer and director of Irish Park and Galligan breached his fiduciary duty as a majority shareholder; (4) Rice's conduct was willful and reckless; and (5) the asset sale was not in compliance with the requirements for a major asset sale by an Indiana corporation. The trial court granted the defendants' motion for partial summary judgment and denied the plaintiffs'. The Court of Appeals affirmed the denial of plaintiffs' motion for partial summary judgment, but reversed the trial court's grant of defendants' motion for partial summary judgment. *Galligan v. Galligan,* 712 N.E.2d 1028 (Ind.Ct.App. 1999).

## Standard of Review

On appeal, the standard of review of a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 983–84 (Ind. 1998). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Id.; Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997). The review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H); *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993).

## I. Defendant's Motion for Partial Summary Judgment

The trial court granted defendants' motion for partial summary judgment on the grounds that "the plaintiffs' claim in this case is for a statutory appraisal proceeding under I.C. 23–1–44–8 to determine the fair market value of plaintiffs' shares in Irish Park" and that under *Fleming v. International Pizza Supply Corp.*, 676 N.E.2d 1051, 1056–57 (Ind.1997), "the statutory appraisal procedure is plaintiffs' exclusive remedy." The Court of Appeals reversed, holding that because the initial asset sale did not meet the statutory requirements for a sale of substantially all of the assets of a corporation, the dissenters' rights were not triggered, and, therefore, the shareholders could assert the common law remedies pleaded in the complaint. The court also held that the later attempt to ratify the sale was ineffective because the defendants did not invoke the statutory procedures to trigger the plaintiffs' dissenters' rights. As a result, the Court of Appeals concluded that *Fleming* was inapplicable. *Galligan*, 712 N.E.2d at 1032.

### A. *Fleming v. International Pizza Supply Corp.*

In *Fleming*, this Court held that, "in a merger or asset sale, the exclusive remedy available to a shareholder seeking payment for the value of the shareholder's shares is the statutory appraisal procedure." 676 N.E.2d at 1056. This was based on Indiana Code section 23–1–44–8(c), which reads: "A shareholder: who is entitled to dissent ... may not challenge the corporate action creating ... the shareholder's entitlement." The Official Comments to section 23–1–44–8 note that the Indiana legislature deleted the language from the Revised Model Business Corporation Act that stated that dissenters' rights are exclusive "unless the action is unlawful and fraudulent." Deletion of the exception for "unlawful and fraudulent" actions reflected a legislative policy choice to limit shareholders to dissenters' rights, even in fraudulent situations. It was also consistent with the policies of corporate majority rule, finality, and resolving dissenters' claims on a timely basis. *Fleming*, 676 N.E.2d at 1057. *Fleming* noted that the legislature specifically intended to eliminate the doctrine stemming from *Gabhart v. Gabhart*, 267 Ind. 370, 392, 370 N.E.2d 345, 358 (1977), namely, that an action for a claim of fraud was an alternative remedy available to shareholders attacking a transaction that triggers dissenters' rights. *Fleming*, 676 N.E.2d at 1054–55. *Fleming* also noted that any claims that the corporation had disposed of assets for less than full value, or any other claim of injury to the corporation, could be asserted in the dissenters' rights valuation proceeding and be valued along with the other assets of the corporation:

> [W]e generally agree that the expression "corporate action to which the dissenter objects" as used in Ind.Code § 23–1–44–3 includes not only the merger or asset sale itself but genuine issues of breach of fiduciary duty and fraud affecting the value of the shares at the time of the transaction. While we acknowledge that the appraisal remedy does not provide for the individual liability of majority shareholders or the recovery of punitive

damages, we believe that those are the policy choices made by the legislature in adopting Ind.Code § 23–1–44–8(c) and are clearly within the legislature's prerogative.

*Id.* at 1058.

### B. *The Requirements for an Asset Sale*

*Fleming* applies only to corporate transactions that trigger dissenters' rights. Among those is a sale of "substantially all" of the corporate property "other than in the usual and regular course of business." Ind.Code § 23–1–44–8 (1998). Indiana Code section 23–1–41–2 requires that, in order for an asset sale to be authorized, "the board of directors must recommend the proposed transaction to the shareholders ... and the shareholders entitled to vote must approve the transaction." That section also requires the corporation to notify the shareholders of the meeting in which they will vote on the proposed transaction and provide a description of the transaction. *Id.* § 23–1–41–2(d).

■ The May 30 sale of Irish Park's assets to Golden Shamrock did not comply with corporate law in several respects. Galligan did not have the authority to sell the corporation's assets. He was not an officer of the corporation and the bylaws specifically required that "all ... written contracts and agreements to which the Corporation shall be a party shall be executed in its name by the President or ... Vice Presidents and attested by the Secretary or an Assistant Secretary." More importantly, the requirements of Indiana Code section 23–1–41–2 for the sale, lease, or disposition of "all, or substantially all, of its property ... otherwise than in the usual and regular course of business" were not met. Specifically, there was no proposal by the board, no notice to the shareholders, and no approval by the shareholders.

1. The bylaws authorized the President, any Vice President, the Board of Directors, or shareholders holding no less than one-fourth of the outstanding shares to call a special

### C. *Ratification*

■ The defendants effectively concede that the initial sale did not conform to the requirements of the Indiana Business Corporation Law. They argue that the asset sale was ratified on March 11, 1998, and that the plaintiffs are therefore limited to statutory dissenters' rights. We agree that the March 11 meeting ratified the earlier sale.

Any corporate action that is defectively undertaken may be ratified by subsequent action. *Cf. Indiana Trust Co. v. International Bldg. & Loan Ass'n,* 165 Ind. 597, 607, 76 N.E. 304, 307 (1905). In May 1998, Galligan, as the majority shareholder,[1] sent each shareholder a notice of a "Special Meeting of Shareholders, Irish Park, Inc." The notice listed as one of the meeting's purposes "[t]o consider the ratification of the sale of Irish Park assets to Larry Rice d/b/a Golden Shamrock on May 30, 1997." This satisfied the statutory notice requirement for the meeting. Then, at the meeting held on March 11, 1998, Galligan replaced the current board of directors and officers with himself as the sole director and chairman. Finally, the minutes state:

> The Chairman stated that Golden Shamrock, Inc. had made an offer to purchase the assets of Irish Park along with two buildings, six acres of land and various pieces of heavy equipment which are the personal property of Thomas R. Galligan. The sale of assets had become necessary when the Internal Revenue Service stated that it would levy upon Irish Park's assets on June 2, unless over $76,000.00 of delinquent withholding taxes were repaid on that date. In addition, the Corporation had lost its ability to bond construction projects. Without its bonding capacity, the Corporation was unable to liquidate its exist-

shareholder's meeting. Pursuant to Indiana Code section 23–1–29–2(a), this was a valid provision.

ing bank debt. All of the shareholders having personally guaranteed corporate debt, it was believed that immediate liquidation of the corporate bank debt was in the best interest of the Corporation as well as the shareholders.

Because Galligan was the sole director, this satisfied the requirement of a recommendation by the board. Finally, the motion was voted on and a majority of the issued shares—Galligan's fifty-two percent—voted in favor of the transaction, thus satisfying the final requirement of the Code. Generally, at this point, as *Fleming* held, the minority shareholders are limited to dissenters' rights and may not challenge the validity of the asset sale.

### D. *Dissenters' Rights*

The analysis would normally end here because there has been a valid asset sale and Indiana Code section 23–1–44–8 and *Fleming* limit a shareholder's remedies to dissenters' rights. However, the Court of Appeals held that because the corporation did not follow the procedures detailed by the statute providing for dissenters' rights, the shareholders were not limited to the rights provided by that statute.

Indiana Code sections 23–1–44–1 to 20 govern dissenters' rights. First, Indiana Code section 23–1–44–8 identifies the transactions that may trigger dissenters' rights. Among these is an asset sale requiring a shareholder vote. The transaction approved at the March 11 meeting plainly falls within this description. The fact that Galligan as a director or shareholder may have had an interest in the transaction by reason of his concurrent sale of his own property to Golden Shamrock does not disable him from voting as a shareholder in favor of the sale. As the Official Comments to the Indiana Business Corporation Law make clear, the statute explicitly intended to permit a majority shareholder to vote on a transaction even if it is a "conflict of interest" transaction. Ind.Code Ann. § 23–1–35–2 cmts. (d) (West 1998).

Indiana Code section 23–1–44–10(a) then requires a notice of the meeting at which the proposed transaction is to be voted. The notice must inform the shareholders that they "are or may be entitled to assert" dissenters' rights. At the shareholders' meeting, any shareholder wishing to assert dissenters' rights must deliver a notice of intent to demand payment before the vote and must not vote in favor of the proposed transaction. Ind.Code § 23–1–44–11.

Within ten days after approval by the shareholders or within ten days after the corporate transaction if no vote was taken, the corporation must send those entitled to dissent a notice that must:

(1) state where the payment demand must be sent and where and when certificates for certificated shares must be deposited; (2) inform holders of uncertificated shares to what extent transfer of the shares will be restricted after the payment demand is received; (3) supply a form for demanding payment that includes the date of the first announcement to news media or to shareholders of the terms of the proposed corporate action and requires that the person asserting dissenters' rights certify whether or not the person acquired beneficial ownership of the shares before that date; (4) set a date by which the corporation must receive the payment demand, which date may not be fewer than thirty (30) nor more than sixty (60) days after the date the subsection (a) notice is delivered; and (5) be accompanied by a copy of this chapter.

*Id.* § 23–1–44–12(b).

The dissenting shareholders must then demand payment, certify whether they acquired beneficial ownership of the shares before the date the transaction was first announced to the media or shareholders, and deposit the certificates according to the terms set forth in the notice sent by the corporation. *Id.* § 23–1–44–13(a). The shareholders retain all the rights of a shareholder until these rights are changed

by the proposed transaction. *Id.* § 23–1–44–13(b). A shareholder's failure to follow these procedures ends the shareholder's dissenters' rights. *Id.* § 23–1–44–13(c).

As soon as the corporate action is taken, the corporation must pay the corporation's estimate of the "fair value" of the deposited shares to every shareholder who complies with the above requirements. *Id.* § 23–1–44–15(a). "Fair value" is defined to mean the value of the shares "immediately before" the sale. *Id.* § 23–1–44–3. The payment must be accompanied by the corporation's balance sheet, income statement, a statement of changes in shareholders' equity, interim financial statements, the corporation's estimate of the fair value of the shares, and a statement of the dissenters' ability to demand payment. *Id.* § 23–1–44–15(b). If the corporation does not take the proposed corporate action within sixty days, the shares must be returned to the shareholders. *Id.* § 23–1–44–16(a). If, at some later time, the corporation desires to take the proposed action, a new dissenters' notice must be sent. *Id.* § 23–1–44–16(b).

A dissenting shareholder who disagrees with the valuation placed on the shares may notify the corporation of the shareholder's estimate of the fair value of the shares and demand payment. *Id.* § 23–1–44–18(a). This action must be taken within thirty days after the corporation offers payment. *Id.* § 23–1–44–18(b). If the corporation and dissenters cannot agree on the fair value of the shares, Indiana Code section 23–1–44–19 requires the corporation to initiate a court proceeding to determine fair value of the shares on pain of liability for the amount demanded by the shareholders.

### E. *Irish Park's Failure to Comply with the Dissenters' Rights Statute*

■ Although the March 11, 1998 ratification of the asset sale complied with the statutory requirements for a sale of substantially all of a corporation's assets, *see* Ind.Code § 23–1–41–2, it did not satisfy

the dissenters' rights statute. The defendants partially complied with Indiana Code section 23–1–44–10(a) when they included in the notice of the 1998 shareholder's meeting a statement that one of the purposes was "[t]o consider the ratification of the sale of Irish Park assets to Larry Rice d/b/a Golden Shamrock on May 30, 1997." They failed to meet the statutory requirement that the notice advise the shareholders of their ability to assert dissenters' rights. However, this omission was harmless because the plaintiffs clearly were aware of their dissenters' rights and had served a "Shareholders Notice Asserting Dissenters' Right" the day before the proposed meeting.

■ There was, however, a material flaw in the corporation's performance under the dissenters' rights statute. Once the proposed sale was ratified and the shareholders gave their notice of dissent, it then became the corporation's obligation to supply a dissenters' notice in accordance with section 23–1–44–12(b). The notice would have told the shareholders where to deposit their certificates and fixed a date by which the surrender had to be accomplished. This did not occur.

### F. *The Effect of Non–Compliance*

■ As a result of the corporation's failure to send the notice required by section 12(b) of the dissenters' rights statute, the clock prescribed by Indiana Code section 23–1–44–12(b)(4) leading to a specific date for the dissenting shareholders to demand payment did not start to tick. Specifically, the plaintiffs were not told where and when to submit their shares. This error was not harmless because the plaintiffs did not submit their certificates or meet the other mechanical requirements of section 13 and the timetable for initiating an appraisal proceeding was not triggered. In effect, the failure to send the notice put the chain of corporate procedures into limbo. If the shareholders had not challenged this action, the corporation's obligation to pay for the shares would have

been deferred forever. The statute is designed to achieve quick payment and to minimize litigation. But, the statute obviously contemplates that each party will take the prescribed steps in the sequence dictated by the statute. The corporation's failure to take the required steps, if unredressed, would frustrate that goal. Finally, the corporation did not meet the payment requirements of section 15, unless the amount due was zero. Even if no amount was due, the corporation did not comply with the mandate of subsection 15(b) that the corporation supply the required documentation, including a statement of its estimate of the share value.

The issue thus becomes the proper remedy for these failures. Although the dissenters' rights statute expressly provides a remedy when the dissenters fail to follow its requirements, I.C. §§ 23–1–44–11(b), 13(c) & 18(b), it remains largely silent as to what happens if the corporation fails to initiate the dissenters' rights proceeding. Presumably this is because most corporations scrupulously follow the dictates of the statute to foreclose litigation, including the possibility of individual shareholders seeking remedies against the corporation and its management in addition to payment of the value of their shares.

The Court of Appeals held "that Galligan and Rice are not entitled to hold Plaintiffs to the remedy provisions of Ind.Code § 23–1–44 while exempting themselves from its notice provisions." *Galligan,* 712 N.E.2d at 1032. The Court of Appeals concluded that a suit for breach of fiduciary duty and fraud would be available to attack the underlying transaction. Presumably, the remedies for such a claim include rescission and, under some circumstances, punitive damages. We do not agree that these claims are available. As *Fleming* pointed out, the statutory scheme strongly favors majority rule and finality of corporate transactions. 676 N.E.2d at 1057. The 1986 Indiana Business Corporation Law sought to eliminate the opportunity created by prior decisional law to

invoke broader remedies than a fair valuation of the shares. For that reason, we think the consequence of disregarding the statute is not to vitiate the dissenters' rights provisions altogether. Moreover, we do not believe the corporation should be able to eliminate dissenters' rights by its own inaction. Here, the plaintiffs, as shareholders, had attempted to assert dissenters' rights at the time of the ratified corporate action. They cannot be held to have forfeited their rights by reason of the corporation's ineptitude. Accordingly, the notice of intent to dissent remained valid as to the ratified transaction and the dissenters are entitled to their rights under the statute.

The defendants contend that despite the corporation's disregard for statutory requirements the dissenters are limited to their dissenters' rights as articulated in *Fleming.* This result is also unsatisfactory because it provides little incentive for corporations and their managers to comply with the statute. If a failure to send the dissenters' notice as required by Indiana Code section 23–1–44–12 has only the effect of tolling the dissenters' statutory time periods for invoking the procedure, dissenters' sole remedy would be to petition the court to force the corporation to obey the statute. But some shareholders may be ignorant of their remedies or have little incentive to move promptly and at potentially significant expense. If this is the sole remedy, disregard of the statute with a consequent relegation of the minority shareholders to a legal limbo will go unredressed.

We conclude that the proper resolution of these conflicting considerations is to restrict the shareholders to their dissenting shareholder rights as to the underlying transaction, but also to recognize that they may proceed with a separate claim against the persons responsible for a breach of statutory duty with respect to the dissenters' rights proceeding. Otherwise stated, dissenters' rights are the exclusive remedy afforded for actions or omissions in a

merger or asset sale, but failure to afford the dissenters' rights remedy is an independent wrong that is not itself subject to the dissenters' rights provisions.

Damages for a breach of the statutory duty to provide dissenters' rights would presumably include any loss incurred from delay in consummating the dissenting shareholders' proceeding or otherwise occasioned by the failure to comply with the statute. If the corporation is solvent there will normally be no damages in addition to the amount recoverable by the exercise of dissenters' rights. However, if the corporation's financial capacity to make full payment of the fair value has been impaired by reason of the delay, the shortfall may be a component of those damages. Here, the plaintiffs requested dissenting shareholder rights despite the corporation's failure to comply with the notice requirements. If the corporation's minutes are to be believed, the value of the shares may ultimately prove to have been zero at all relevant times. Thus, in this case, there may be no consequences of the failure to comply with corporate law, but that is an issue for the trial court.

The 1986 wholesale revision of Indiana corporate law included a number of provisions that were intended to limit the liability of directors of Indiana corporations. We find nothing, however, in that statute that abrogates the basic principle that directors who breach duties to the corporation or to shareholders may be held accountable. Nor do we believe that this recognizes a "new" cause of action for breach of the statutory duties imposed by the Indiana Business Corporation Law. Rather, we simply apply the commonly accepted principle that the directors may be liable for disregarding a statutory mandate to these unusual facts, where the directors failed to take the steps necessary to enjoy the safe harbor provided by the dissenters' rights statute.

No party has raised the issue of the requisite scienter for director liability, but we note that the Indiana Business Corpo-

ration Law has explicitly addressed that issue in Indiana Code section 23–1–35–1. More particularly, subsection (e) of that section provides that a director "is not liable" for an act or omission unless "[t]he breach or failure to perform constitutes willful misconduct or recklessness." This section seems rather clearly to recognize that a claim can exist for breach of statutory duty of a director. *See also* Ind.Code Ann. § 23–1–36–2 & cmts. (West 1998) (discussing the duties and potential liabilities of officers).

In sum, the shareholders accept the risk of loss from various causes, including competition, natural disasters, and a variety of business judgments. But the risk that the corporate law will be ignored is not one of them. A shareholder has a right to assume that the corporation will be operated in conformity with the statute. The statute is quite clear that directors who recklessly or willfully disregard statutory directives may be liable. Those provisions, like the dissenters' rights provisions, are built into the structure the shareholder accepts by buying a share in an Indiana corporation.

### G. *Attorney's Fees*

We also note that the statute itself provides an additional deterrent to disregarding its procedures. Although the statute does not specifically address what happens when the corporation fails to comply with the requirements of notice and other steps set forth in sections 10 through 18, Indiana Code section 23–1–44–20(b) provides that:

> The court may also assess the fees and expenses of counsel and experts for the respective parties, in amounts the court finds equitable: (1) against the corporation and in favor of any and all dissenters if the court finds the corporation did not substantially comply with the requirements of sections 10 through 18 of this chapter; or (2) against either the corporation or a dissenter, in favor of any other party, if the court finds that the party against whom the fees and expenses are assessed acted arbitrarily,

vexatiously, or not in good faith with respect to the rights provided by this chapter.

This provides an incentive to obey the statute in the initial transaction, because in addition to having to pay the fair value of dissenters' shares, the corporation may be liable for fees and expenses of counsel and experts for both sides.

### H. *Interest*

■ Because the corporation caused the delay in the dissenters' rights proceedings, the response time for dissenters has been delayed until the corporation abides by the statute. The statute also provides for interest on the unpaid balance of fair value from the date of tender of the shares to the corporation to judicial resolution of a valuation dispute. Ind.Code § 23–1–44–19(e). It does not provide for interest if the corporation pays voluntarily. Ind. Code Ann. § 23–1–44–18(a) & cmts. (West 1998). Given that the corporation did not comply with the statute, interest from the date of the sale should follow. If the value of the shares was zero, this is an academic point.

### I. *Summary*

■ In this case, the plaintiffs can proceed in court to force Irish Park to comply with the dissenters' rights statute. As *Fleming* held, shareholders' claims for fraud in the underlying transaction, including the breach of fiduciary duty claims, may be evaluated as part of the dissenters' rights proceeding to the extent any fraud or breach caused a decline in the value of their shares. 676 N.E.2d at 1058. But, as *Fleming* held, these claims may not be pursued as independent actions. *Id.* at 1056. The plaintiffs can also seek to recover attorney's fees and any other expenses, if they can show that these fees and costs were caused by Irish Park's failure to follow the mandate of the dissenters' rights statute, and interest. Finally, if damages can be shown to have been caused by a breach of a statutory duty

with respect to the dissenters' rights proceedings, the plaintiffs may bring a separate claim against the persons responsible.

### II. Plaintiffs' Motion for Partial Summary Judgment

The Court of Appeals affirmed the trial court's denial of the plaintiffs' motion for partial summary judgment on five issues including: (1) whether Rice was an officer and director of Irish Park at the time of the asset sale, (2) whether the asset sale between Irish Park and Golden Shamrock was voidable for conflict of interest, (3) whether Galligan and Rice breached their fiduciary duties as majority shareholder and officer and director, respectively, (4) whether Rice's conduct was reckless and willful giving rise to personal liability under the Indiana Code, and (5) whether the asset sale was in accordance with the Indiana Code.

■ First, the issue of whether Rice was an officer and director at the time of the asset sale is not appropriate for summary judgment. Summary judgment is proper when there are no genuine issues of any material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56. On a summary judgment motion, the court cannot weigh evidence to determine its credibility. *National City Bank v. Shortridge*, 689 N.E.2d 1248, 1251 (Ind.1997). In this case, although the plaintiffs designated evidence that Rice was an officer and director, namely, Rice's signature on the Irish Park corporate tax return and the lack of records indicating Rice's resignation, Rice designated deposition testimony that he resigned as an officer and director of Irish Park in January of 1997. This raises a genuine issue of fact. To the extent Rice's status is material to any issue in the case, it remains for trial.

■ Plaintiffs next claim that the asset sale to Golden Shamrock was voidable because Rice was an officer and director of Irish Park and also owned Golden Sham-

rock. Indiana Code section 23–1–35–2 defines a conflict of interest transaction as "a transaction with the corporation in which a director of the corporation has a direct or indirect interest." It is not clear that Rice was a director of Irish Park at the time of the asset sale. Even if he was a director, there is a factual issue raised as to whether the transaction was valid. This issue is also not appropriate for summary judgment.

 Similarly, the issues of whether Rice breached his fiduciary duties to the shareholders as an officer and director and whether his conduct was willful and reckless as described in Indiana Code section 23–1–35–1 require resolution of his role in Irish Park at the time of the asset sale, as well as a determination of the other factual issues these claims raise.

 The plaintiffs also contend that as a matter of law Galligan breached his fiduciary duty to them as minority shareholders. Although it is true that the majority shareholder owes fiduciary duties to the minority shareholders under Indiana law, *Barth v. Barth*, 659 N.E.2d 559, 561 (Ind.1995), the facts in this case do not establish as a matter of law that Galligan breached his duties as a fiduciary by failing to act in the best interests of the shareholders and the corporation. He may have caused the corporation to take action that did not comply with statutory requirements, but there is no showing by undisputed facts that he failed to act in the interests of the corporation and its shareholders. We affirm the trial court's denial of summary judgment on this issue. Moreover, if, as Galligan apparently claims, the shares were worthless by the time of the transaction, there may well be no damages even if there were breaches of corporate protocol.

Finally, plaintiffs seek summary judgment on whether the sale of assets was in accordance with the Indiana Code. Indiana Code section 23–1–41–2 allows a corporation to sell all or substantially all of its assets, not in the regular course of business, if the board of directors recommends and its shareholders approve the proposed transaction. In this case, it is clear that the original sale on May 30, 1997 did not comply with the requirements of the statute. However, for the reasons given above, the corporation's subsequent acts satisfied the requirements of the asset sale statute. Therefore, the plaintiffs' motion for summary judgment was correctly denied.

### Conclusion

The trial court's grant of defendants' motion for summary judgment is affirmed as to the corporation, but vacated as to the other defendants. The trial court's denial of plaintiffs' motion for summary judgment is affirmed. This case is remanded for proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON and RUCKER, JJ., concur.

SULLIVAN, J., concurs in part with separate opinion.

SULLIVAN, Justice, concurring in part.

I concur in the majority's opinion except for its recognition of a private cause of action for breach of a statutory duty with respect to dissenters' rights proceedings. I believe that under common law principles of agency and contract, shareholders have sufficient protection in such situations. *See* Official Comments to Indiana Code § 23–1–36–2.